STATE OF MINNESOTA *ex rel.* Thomas K. Stateler *vs.* GEORGE REIS and another.

May 1, 1888.

**Assessments for Local Improvements — Street Sprinkling. —** Street sprinkling is a "local improvement," within the meaning of section 1, art. 9, of the constitution, for which an assessment may be levied upon the property fronting on the street in proportion to its lineal feet frontage, without regard to its cash valuation.

The relator, having received a deed of a lot on Isabel street in St. Paul, tendered it to George Reis, the city treasurer, with the request that he indorse on it his official certificate that all assessments on the lot for local improvements had been paid, such certificate being requisite to entitle the deed to record, and the charter requiring the treasurer to indorse it on the deed in case there were at the time no such assessments unpaid. The treasurer refused to make the certificate, because of an unpaid assessment for sprinkling Isabel street, on which the lot was situated. Thereupon the relator procured an alternative writ of *mandamus* to be allowed and to be issued from the district court for Ramsey county to compel the indorsement to be made. The writ was directed to the city as well as to its treasurer, and, answer having been made, the relator moved, before *Brill,* J., for a peremptory writ. The motion was granted, and the city and the treasurer appealed.

*W. P. Murray*, for appellants.

*S. L. Pierce*, for respondent.

MITCHELL, J.[1]  The principal question in this case is whether sprinkling a street is a "local improvement," within the meaning of section 1, art. 9, of the constitution, for which an assessment may be levied upon the property fronting upon the street without regard to its cash valuation.  If it be an "improvement" at all, it cannot be, and indeed is not, controverted but that it is "local,"—that is, that it is of exceptive and special benefit to the property fronting on the street.  While the public who travel it are also benefited by having the street sprinkled, yet it requires no argument to show that those who reside or do business on it receive an exceptional and special benefit from abating the nuisance of dust, which is a source not only of discomfort to them, but also of actual pecuniary injury to their household goods or merchandise.  Sprinkling a street renders the property fronting on it more desirable, and hence more valuable, for occupancy,—a benefit not shared in by other property.

The relator's main contention, however, is that street sprinkling is not an "improvement," within the meaning of this section of the constitution, because it lacks the element of permanence; that its results are transient; that, to constitute an improvement, there must be some work or structure, such as a pavement, sidewalk, or the like, that will remain after the labor is performed, and permanently enhance the value of the property.  But, if permanence or durability is to be the test, how long must the beneficial results last in order to constitute an improvement?  It certainly will not be claimed that the work must be eternal in duration, or imperishable in character. We are unable to see any difference in principle between the work of street sprinkling, the results of which, unless repeated, last but a day, and the construction of a block pavement or wooden sidewalk, which wears out or decays, and has to be rebuilt, every few years.  When a pavement or sidewalk has worn out, the future value of the property is not enhanced by it, any more than it is by street sprinkling when that ceases.  Neither do we see that it makes any difference

[1] Gilfillan, C. J., took no part in the decision of this case.

whether the substance applied to the surface of the street is wood, which has to be renewed every few years, or water, which has to be applied daily. Each benefits the adjacent property as long as it lasts, and no longer. It is not the agency used, or its comparative durability, but *the result accomplished,* which must determine whether a work is an improvement in the sense in which that word is here used. The only essential elements of a "local improvement" are those which the term itself implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city. If it does this,—rendering the property more attractive and comfortable, and hence more valuable for use,—then it is an improvement. That the regular and systematic sprinkling of a street has this effect upon the property fronting on it is a matter of common knowledge. This construction is fully warranted by the definitions of the word "improvement" given by lexicographers. It has been defined as "that by which the value of anything is increased, its excellence enhanced, or the like;" or "an amelioration of the condition of property affected by the expenditure of labor or money, for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes."

Of course, the word is to be construed according to the subject-matter. In a lease or deed, or in a statute for the protection of the occupants of land under color of title, and the like, it may have a special or restricted meaning. In some such cases it may refer exclusively to a certain kind of improvements, such as structures erected on the land, which will remain after the occupant who erected them has vacated the premises, and the benefit of which will inure to his successor. But that the word is used in this section in the broader sense to which we have referred, is evident from a consideration, not only of the subject-matter being treated of, but also of the law of taxation by special assessments in the absence of any constitutional provision on the subject, and of the causes which led to the adoption of this section in its present form. In the absence of any constitutional prohibition, the power of taxation by special assessments is undoubted. Such taxes are levied on the assumption that a portion

of the community is to be specially benefited in the enhancement of property peculiarly situated as regards the contemplated expenditure of public money.   This is the underlying idea of all such assessments. No decision has ever attempted to enumerate the purposes for which special assessments might be levied, for the obvious reason that it is impossible to do so.   In the absence of constitutional restriction, the only limitations upon the power of the legislature to authorize the levy of a special assessment are—*First,* it must be levied for a public purpose, for the power of taxation can be exercised for none other; and, *second,* the property on which it is assessed must be peculiarly and specially benefited by the work for which it is levied; *third,* that it must be apportioned, according to some reasonable rule, upon the basis of benefits, ascertained or implied, resulting to the property assessed.   Inasmuch as these benefits may not be, and usually are not, distributed in proportion to the cash value of the property assessed, therefore, in accordance with the underlying idea of all such assessments, it was usually apportioned either upon the basis of benefits as ascertained by commissioners, or other such body, or according to some definite standard fixed upon by the legislature itself; as, for example, according to street frontage in the case of street improvements, the benefits of which might be fairly presumed to diffuse themselves along the line of the street in a degree bearing some proportion to frontage.   The authorities are united that, in the absence of a constitutional provision requiring some other method of apportionment, either of these might be adopted.   That street sprinkling is a public purpose is unquestioned.   That property fronting on the sprinkled street receives an exceptional local benefit from it, is, we think, sufficiently apparent from what has been already said.   Therefore there can be no doubt that, in the absence of anything in the constitution to the contrary, the legislature would have the right to authorize an assessment for street sprinkling, to be apportioned according to frontage on the street.

Section 1, art. 9, of the constitution, as originally adopted, was: "All taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state."   In

*Stinson* v. *Smith*, 8 Minn. 326, (366,) this court at an early day held (probably against the weight of authority elsewhere) that this provision, that taxes should be levied according to the cash valuation of the property, applied to local or special assessments, as well as to taxes for general purposes. There was no question raised or suggested that this section limited the purposes for which such taxes might be assessed. Neither did the court hold that it restricted the power of apportionment, so far as determining what the taxing district should be, or what property should pay the tax. The decision only went to the basis upon which this apportionment should be made, holding that it must be according to the cash valuation of the property. Under this method, although two pieces of property might receive an equal amount of benefit, yet, if one was worth only half as much as the other, it would only have to pay half as much tax. The supposed inequality of this led to the constitutional amendment of 1869, adding to the section the following: "*Provided*, that the legislature may, by general law or special act, authorize municipal corporations to levy assessments for local improvements upon the property fronting upon such improvements, or upon the property to be benefited by such improvements, without regard to a cash valuation, and in such manner as the legislature may prescribe." The language of the amendment, especially when read in the light of the cause which led to its adoption, satisfies us that it was not designed either to restrict or extend the purposes for which local assessments might be made, but merely to take them out from under the provision requiring taxes to be levied according to the cash valuation of the property, and to authorize them to be apportioned according to benefits ascertained or benefits implied, according to frontage or some other such fixed standard, and that the term "local improvements" includes anything for which a tax by special assessment might, under the general rules of law, be imposed,—that is, any public purpose from which the property assessed derives a benefit special and local in its nature.

The policy of the system of taxation by special assessments is a debatable question, upon which even courts have often assumed to express their opinions; one eminent judge remarking that "their in-

trinsic justice strikes every one; that if an improvement is made, the benefit of which is 'local,' it is just that the property benefited should 'bear the burden,' "—while another terms them "a species of despotism that ought not to be perpetuated under a government which claims to protect property equally with life and liberty." This question of policy, however, is one not for the courts, but for the legislature, and ultimately for the people.

2. The relator makes the further point that even if street sprinkling is a local improvement, the mode of apportioning it provided for by the act (Sp. Laws 1887, *c*. 7) is unequal, and unauthorized by the constitution. His point is, if we understand him, that the act in question requires that the entire cost of sprinkling all the streets in the city should be included in one common assessment, and apportioned *pro rata* upon the lineal feet of all the property fronting upon all the streets sprinkled, without regard to the fact that one street might be wider than another, or so situated that the sprinkling would cost much more or much less than on other streets. It is enough here to say that we do not think that the act in question requires the assessment to be made in this manner, and it does not appear that any such method was adopted in the present instance.

Order reversed.