## THE VILLAGE OF MORGAN PARK

*v.*

## AUSTIN WISWALL *et al.*

*Filed at Ottawa April 1, 1895.*

1. PUBLIC IMPROVEMENTS—*question whether an improvement is "local" may be reviewed.* While the decision of municipal authorities as to what mode of taxation shall be adopted to pay for a local improvement is a matter of discretion which cannot be reviewed by the courts, the determination as to whether an improvement is or is not *local,* within the powers conferred by the constitution and statutes, may be reviewed. *Louisville and Nashville Railroad Co.* v. *East St. Louis,* 134 Ill. 656, explained; *Bloomington* v. *Chicago and Alton Railroad Co.* id. 451, followed.

2. SAME—*verdict is not conclusive that improvement is "local."* The verdict of a jury that property is specially benefited by an improvement is not conclusive that the improvement is a "local" one, which may be paid for by special assessment, where the question of the power of the municipal corporation to make such improvement by special assessment was, by consent, reserved for decision, without prejudice, until after determination of the issues submitted to the jury.

3. SAME—*water-works for fire purposes are not a local improvement.* The construction of a water-works plant for fire purposes and the use of the inhabitants of a village, other than pipes and such portion of the system as are local in their character and nature and of special benefit to particular property, is not a local improvement which can be paid for by special assessment,—especially in view of the statute expressly empowering villages to levy and collect a general tax for the construction of water-works. *People* v. *Sherman,* 83 Ill. 165, distinguished.

4. TRIAL—*power of court to dismiss petition for special assessment after verdict.* Where the question whether an improvement is local in its character and can be made by special assessment, is, by consent, reserved until after verdict, the court may, upon determining those questions in the negative, refuse to allow a motion for judgment on the verdict, and dismiss the petition without in terms setting the verdict aside, such action being, in effect, a vacation of the verdict.

APPEAL from the County Court of Cook county; the Hon. GEORGE W. BROWN, Judge, presiding.

G. W. NORTHRUP, Jr., and NEWMAN & NORTHRUP, for appellant:

The determination as to whether or not the improvement in question should be paid for by special assessment or not was within the discretion of the board of trustees, and they having declared in the affirmative on that question, the court has no authority to pass on the matter. *Railroad Co.* v. *East St. Louis*, 134 Ill. 656; *Fagan* v. *Chicago*, 84 id. 231; *Watson* v. *Chicago*, 115 id. 78; *Springfield* v. *Sale*, 127 id. 359; *Bigelow* v. *Chicago*, 90 id. 53.

That the improvement gives some benefit common to the whole town cuts no figure. The Special Assessment act provides that the commissioners shall fix the amount of public benefit and apportion it to the town. Rev. Stat. chap. 24, art. 9, sec. 24.

The power given in paragraphs 2 and 3 of section 1 of article 5, to construct viaducts by general taxation, does not prevent the municipality from constructing them by special assessment. *Railroad Co.* v. *East St. Louis*, 134 Ill. 656; *Murphy* v. *Peoria*, 119 id. 509.

Article 10 of the City and Village act is in full force in every respect, and is not repealed or modified in any way by the act of 1873, (Hurd's Stat. 1893, chap. 24, sec. 254,) authorizing municipalities to construct and maintain water-works. *Hequembourg* v. *Town of Lake*, 6 Biss. 325; *Board* v. *People*, 137 Ill. 662.

The improvement in the case at bar is primarily a reservoir. Everything else is appurtenant to the reservoir, and expressly so provided by the ordinance, and therefore the cost thereof may be paid for by special assessment. 2 Dillon on Mun. Corp. 797; *Schenly* v. *Commonwealth*, 36 Pa. St. 29.

The question of fact as to whether or not property is specially benefited is a question to be determined solely by a verdict of a jury, unless the parties expressly waive the right to have a jury trial and submit the matter to

the court. *Watson* v. *Chicago*, 115 Ill. 78 ; *DeKoven* v. *Lake View*, 131 id. 545.

Even if the benefit sustained by the objector's property was of a kind similar to that sustained by all the property in the village, the assessment was legal, and should have been confirmed. *Chicago* v. *Law*, 144 Ill. 569; *Astor* v. *Mayor*, 62 N. Y. 589 ; *People* v. *Sherman*, 83 Ill. 165.

WICKETT, WICKETT & BRUCE, H. S. BOUTELL, KEMPER K. KNAPP, and WILLIAM J. AMMEN, for appellees :

What is meant by the phrase, "local improvement," in the constitution and the City and Village act? The appellees offer the following definition : "A local improvement is an improvement made by a city, town or village which directly and specially benefits the real estate of a particular part of such city, town or village." *Rogers* v. *St. Paul*, 22 Minn. 494; Cooley on Taxation, 109, 110, 177, 419, 423, 447, 459 ; Dillon on Mun. Corp. secs. 400, 401, 586, 596, 597; *Dorgan* v. *Boston*, 12 Allen, 223 ; *Chicago* v. *Law*, 144 Ill. 569 ; *Wilson* v. *Board of Trustees*, 133 id. 443 ; *State* v. *Reis*, 38 Minn. 371.

Mr. JUSTICE BAKER delivered the opinion of the court:

The village of Morgan Park includes within its boundaries about 1800 acres of land. The settled or improved portion of the village covers about 300 acres. It is provided with a sewerage system, which is furnished with a six and one-half foot brick outlet, which runs down to the Calumet river, about two miles south of the southern limits of the village. It also has a water-works system. This latter consists of an artesian well six inches in diameter and 1100 feet deep, reaching down to the St. Peter sandstone. Water is taken out of this well by a deep-well pump, the bucket being located 180 feet below the surface. It is discharged at the surface into a ground tank of a capacity of 25,000 gallons. It is then forced into the mains and also into an elevated tank

that has a capacity of about 125,000 gallons. There seems to be a difference of opinion as to whether or not these existing water-works are adequate for the present needs of the village, which has a population of about two thousand.

On August 4, 1893, the president and board of trustees of the village passed an ordinance for the construction of a new water-works plant. The ordinance provided that certain designated lots should be acquired; that a ground reservoir should be constructed thereon of the capacity of 100,000 gallons; that an artesian well 1300 feet deep and fourteen inches in diameter should be bored on said lots; that a pump house should be erected and a duplex, compound, non-condensing pumping engine constructed therein, and a deep-well pump placed over the artesian well, and also that steam boiler and appurtenances and force-pumps should be constructed, for the purpose of forcing the water out of the ground reservoir into the water-mains already laid, and to the higher reservoir already existing. All this was declared by the ordinance to be "for the purpose of securing a supply of water under pressure, for fire protection and other uses of the inhabitants of said village." The ordinance provided that the cost and expense of acquiring said lots and constructing said improvements "shall be defrayed by a special assessment to be levied upon the property specially benefited thereby, to the amount that the same may be legally assessed therefor, and the remainder of said costs of acquiring said lots and constructing said improvements shall be paid by general taxation."

The commissioners appointed to make an estimate of the cost of the improvement reported the same at $35,000. The commissioners appointed to make the special assessment estimated and apportioned $504.12 of that amount to the village of Morgan Park, and apportioned and assessed the sum of $34,495.88 upon the several lots, blocks, tracts and parcels of land in the village. As we

understand the record, assessments of special benefits were made upon all, or substantially all, of the real estate within the territorial limits of the village, but that afterwards, in the county court, the proceeding was dismissed by the village authorities as to the four railroad rights of way running through such territorial limits.

Upon the return of the assessment roll into the county court of Cook county, some thirty of the property owners, who owned about 800 acres of the land within the village limits, filed objections to the confirmation of the assessment. The objections interposed were very numerous. Among them were these : That the ordinance of August 4, 1893, was void; that the assessment and all the proceedings are void ; that there is no authority of law for the making of said assessment for the proposed improvement; that the making of said proposed improvement by special assessment is not within the corporate powers of the village; that the proposed improvement is not a local improvement, and that the assessment is wholly unconstitutional, inequitable and void.

Prior to the trial it was ordered that all objections raising legal questions should be reserved until after the jury issues were determined, and that no rights should thereby be lost to the objectors. Thereupon there was a jury trial, which resulted in a verdict for the petitioner, and a finding that the property of the objectors was not assessed more than it would be specially benefited or more than its proportionate share of the cost of the improvement. A motion for a new trial was made by the objectors, but it was never formally disposed of by the court. The petitioner moved for judgment on the verdict, but the court thereupon dismissed the petition "in so far as it relates to the property of the objectors," on the ground that the improvement was a general improvement and not a local improvement, and that the property of the objectors was not specially benefited by the

improvement, but the benefit sustained, if any, was common to all the property in the village. From these rulings, and the judgment of the court dismissing the petition as to Austin Wiswall and the other objectors, the village of Morgan Park prosecuted this appeal.

It is urged by appellant that the determination of the question whether or not the improvement at bar should be paid for by special assessment was within the discretion of the board of trustees of the village, and they having decided that it should so be paid, their decision is conclusive, and cannot be reviewed by the courts. If it be conceded that the improvement is, in fact, a "local improvement," within the meaning of the constitutional provision and the statute, then the conclusion reached by appellant is sound, but otherwise it is not. It is the "power to make *local* improvements by special assessment" that the constitution authorizes the General Assembly to vest in the corporate authorities of cities, towns and villages, (art. 9, sec. 9,) and it is the power to make *local* improvements by special assessment that the legislature has accordingly delegated to such municipal corporations. (Rev. Stat. chap. 24, art. 9, secs. 1, 2.) If a proposed improvement is a *local* improvement in the sense suggested, then it devolves upon the municipality to prescribe, by ordinance, whether it shall be made by special assessment, by special taxation of contiguous property, by general taxation, or by a combination of the latter with either of the others. (*Kuehner* v. *City of Freeport*, 143 Ill. 92.) The improvement being, in truth and in fact, a *local* improvement, the decision of the municipal authorities is final when they adopt one or another of the modes prescribed by law for the purpose of raising funds to pay for it.

In *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, 134 Ill. 656, the improvement was a viaduct over several railroad tracks and a creek immediately east of them, that were crossed by a public street called "Broad-

way." It was objected that the viaduct was "not a local improvement, within the meaning of the statute authorizing the levy of special assessments." In there saying that the decision of the city council was final, it was manifestly only intended to hold that the determination of the question whether the improvement there involved should "be treated as a local improvement in raising funds to pay for it" by special assessment, or treated as a general improvement by paying for it out of the general funds of the city, devolved upon the city council alone, and not upon the courts. The immediately following language, to-wit, "of course they must act reasonably and without fraud, otherwise their action will be void," plainly indicates that it was not intended to be held by the court that the action of a city council providing that a proposed improvement shall be paid for by special assessment was always final, regardless of the constitutional and statutory requirements that an improvement that can be paid for by special assessment must be a local improvement. And in the subsequent case of *City of Chicago* v. *Law*, 144 Ill. 569, in speaking of this case of *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, we said: "That was a case, in its facts, where there could be no doubt that the improvement was a local improvement, within the meaning of the statute, as was held by the court, and what was said in that case must be confined to the facts presented by the record then under consideration."

For the proposition in the *East St. Louis case* that the "decision on these questions is final," the only authority cited in the opinion is *Fagan* v. *City of Chicago*, 84 Ill. 227. Turning to that case, it will be found that what was there held was, that cities, towns and villages have the exclusive power to determine whether a proposed *local* improvement shall be made by special assessment, special taxation or general taxation, and that the courts have no power to interfere with the exercise of their discretion.

In the case of *Chicago* v. *Law*, already cited, it was held that where an improvement is provided for by ordinance which is manifestly not a local improvement, a special assessment therefor may be challenged by the property owner whose property may be assessed, and the court may refuse to confirm such assessment, and dismiss the proceeding. We think it immaterial to the particular question just now under examination to inquire upon what ground it was that we held the improvement there involved was not a local improvement.

In *City of Bloomington* v. *Chicago and Alton Railroad Co.* 134 Ill. 451, we held that the corporate authorities of cities and villages can not arbitrarily provide, by ordinance, that an improvement within their corporate limits shall be treated as a local improvement, to be paid for by special taxation, without having their action reviewed by the courts.

These cases indicate the true and just rule that should and must be applied in these special assessment and special taxation proceedings. If it were settled doctrine that the action of municipal authorities could not be reviewed to the extent of ascertaining whether the proposed improvement is in fact a local improvement, it would be in the power of the corporate authorities of cities, towns and villages to invest themselves, by an ordinance of their own adoption, with a power of taxation that is without warrant or authority of law, and thereby deprive the citizen of his property. The city council of a city or board of trustees of a village can not, by the simple process of assuming that a proposed improvement is a local improvement when in fact it is not such, and passing an ordinance to make it by a special assessment upon property, place their illegal act beyond the reach of the courts.

Another contention of appellant is, that the verdict of the jury that the property is specially benefited is conclusive that the improvement is a local improvement

and that the property of the objectors is specially bene-
fited, and that so long as that verdict remained in full
force it was error in the county court to dismiss the peti-
tion on the ground that the benefit sustained was not a
special benefit. As we have already seen, the objections
that question the power of the village to construct the
new water-works system by special assessment, were,
with the consent of appellant, reserved for decision until
after the determination of the issues submitted to the
jury,—and this, with the saving clause that no rights
should thereby be lost to the objectors. When judgment
upon these objections was thus kept back until after the
introduction of the testimony, such course was presum-
ably pursued in order that the court might be more fully
advised, by the evidence, in regard to the nature, char-
acter, locality and description of the improvement; and
although the court did not formally either sustain or
deny the motion for a new trial, yet when it refused to
allow the motion of the petitioner for judgment on the
verdict, and dismissed out of court the petition "in so far
as it relates to the property of the objectors," that was,
in substance, a setting aside or vacation of the verdict
of the jury. We think there is no merit in the contention
of appellant urged in this behalf.

The material inquiry in the case, as we understand
the record, is, whether or not the water-works system
provided for in the ordinance of August 4, 1893, is a local
improvement, within the purview of the statute. As has
frequently been remarked, the statute does not assume
to define or declare what shall be considered a local
improvement. A question arises, then, as to the signifi-
cation of that term or expression, as found in the statute.

The language of the statute (chap. 24, art. 9, secs. 1, 2,)
is substantially like that of section 9 of article 9 of the
constitution. This court, in *Wilson* v. *Board of Trustees*,
133 Ill. 443, (on p. 469,) in discussing the meaning of the
words "local improvements," as used in said section of

the constitution, said: "In a general sense, all improvements within a municipality are local,—that is, they do not extend to all parts of the State; they have a locality; are nearer to some persons and property than to others. But it is evident that is not what is here meant by 'local improvements,' for if it were, it would have been more natural and lucid to have said 'improvements,' without other qualification, or, simply, 'municipal improvements.' We are to give all the words employed some meaning, if we can, and so we must consider 'local improvements' in connection with 'special assessment,' for the local improvement contemplated is one that can be made by special assessment, if only the corporate authorities shall elect to make it in that way. The words 'special assessment' had received a construction by this court in *Larned's case,* and in other like cases, under the constitution of 1848, and at the time of the adoption of the present constitution it was held, and has been since held, to mean an assessment to pay for an improvement for public purposes upon real property which is, by reason of the locality of the improvement, specially benefited, beyond the benefits by the improvement to real property, generally, throughout the municipality, proportioned by such benefits.   *   *   *   But all improvements within a municipality are not, by reason of their locality, a special benefit to some real property beyond their benefits to real property generally throughout the municipality. *   *   *   In such cases, it is clear the improvement could not be made by special assessment."

In *City of Chicago* v. *Law,* 144 Ill. 569, we said: "The term 'local improvement' is one which has been recognized as applying in cities and incorporated towns to the opening, grading, paving and otherwise improving streets and alleys, making sidewalks, the construction of drains and sewers, and other improvements of this character,—improvements designed to be of benefit to the locality where they are made."

In *Rogers* v. *City of St. Paul*, 22 Minn. 494, it is said : "By common usage, especially as evidenced by the practice of the courts and text writers, the term 'local improvement' is employed as signifying improvements made in a particular locality, by which the real property adjoining or near such locality is specially benefited. * * * Our constitution is to be presumed to have employed the term in the sense which is thus attributed to it by common usage."

In *State* v. *District Court*, 33 Minn. 295, it is said : "It would be difficult to state in what cases local assessments for benefits may or may not be made. In practice, the rule is usually adopted in the case of street improvements, sewers, water-mains, etc., while, as respects public builings or improvements of like general character for the use of the people of a city or district, the burden is properly apportioned by a general tax upon the property of the whole city, or of the district peculiarly benefited. * * * In the case at bar, the fact that the improvement may open up a thoroughfare of great value and convenience to the city at large, or that it is extensive and costly, does not necessarily warrant the court in adjudging it one for which a local assessment may not be made upon property in the vicinity of the improvement if found specially benefited thereby."

In *State* v. *Reis*, 38 Minn. 371, it is said : "The only essential elements of a 'local improvement' are those which the term itself implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city."

In *Hammett* v. *Philadelphia*, 65 Pa. St. 146, it is said by SHARSWOOD, J.: "Local assessments can only be constitutional when imposed to pay for local improvements clearly conferring special benefits on the properties assessed, and to the extent of those benefits. They cannot be so imposed when the improvement is either expressed

or appears to be for general public benefit." See, also, *Washington Avenue case*, 69 Pa. St. 352, where an assessment was held unconstitutional, as being a local assessment for a general public benefit.

In *Hill* v. *Higdon*, 5 Ohio St. 243, Ranney, C. J., in speaking of assessments, said: "The popular, as well as legal, signification of this term had always indicated those special and local impositions upon the property in the *immediate vicinity* of an improved street which were necessary to pay for the improvement, and laid with reference to the special benefits which such property derived from the expenditure of the money." And see, also, *Chamberlain* v. *Cleveland*, 34 Ohio St. 551.

In *Hale* v. *City of Kenosha*, 29 Wis. 599, it is said that assessments, as distinguished from other kinds of taxation, are those special and local impositions upon property in the *immediate vicinity* of municipal improvements,— such as grading and paving streets, and the like,—which are necessary to pay for the improvement, and are laid with reference to the special benefit which the property is supposed to have derived from the expenditure. See, also, *Dorgan* v. *City of Boston*, 12 Allen, 223, for a discussion of the principles upon which special assessments for local improvements are based.

In *Hanscom* v. *City of Omaha*, 11 Neb. 37, the collection of a special assessment for a sewer was perpetually enjoined, and the court in their opinion say: "The principal objects of the present sewer seem to be to furnish a permanent channel for the creek, an outlet for sewers hereafter constructed, and permanent and substantial culverts across the streets intersecting the creek. In no sense can it be called a local improvement. It is for the benefit of the entire city, and not of particular individuals. So far as appears there is not a single lot exceptionally benefited, unless it be some of those in the bed of the creek."

Appellant urges upon our attention the case of *People ex rel.* v. *Sherman,* 83 Ill. 165, *Allentown* v. *Henry,* 73 Pa. St. 404, and *Allen* v. *Drew,* 44 Vt. 174. It seems to us that they do not tend to sustain its contention. The assessment in the *Sherman case* was a valid special assessment authorized by section 5 of the act of April 15, 1873. (Laws of 1873, p. 190; 1 Starr & Curtis' Ann. Stat. p. 545, par. 315.) The ordinance provided for laying cast-iron water supply-pipes or water-mains in many of the streets of the village, and for hydrants. The other two cases relate to assessments in the nature of water rates or water rents imposed only on dwelling houses or premises situate upon the lines of the water-pipes or aqueducts of the cities of Allentown and Burlington, respectively.

Our attention has been called to no reported case, and we know of none, where a special assessment has been sustained for constructing a town hall, a court house, a market house, a water-works plant, or any similar improvement that is for the general benefit of the inhabitants of the municipality. Here it is expressly declared, upon the face of the ordinance itself, that the improvement is "for the purpose of securing a supply of water under pressure, for fire protection and other uses of the inhabitants of said village." We have, then, a supposed special assessment for objects which are avowed to be general, and for the benefit of the village at large. An improvement that is not local, but is a general benefit to the people and property of the whole village, should not be paid for by some or all of the real estate in the village, but the burden should be apportioned by a general tax upon all the property, both real and personal, in the entire village, in proportion to value.

Article 10 of the general Incorporation act of 1872 authorized cities and villages to sink artesian wells or construct water-works, and to borrow money for such purposes, and gave them power to levy, assess and collect water taxes, rents, rates or assessments. The later

act of April 15, 1873, (Laws of 1873, p. 190; 1 Starr & Curtis, p. 544,) authorizes all cities, incorporated towns and villages "to provide for a supply of water for the purposes of fire protection and for the use of the inhabitants of such cities, incorporated towns or villages, by the erection, construction and maintaining of a system of water-works." Section 2 of the act provides that "such cities, incorporated towns and villages may borrow money and levy and collect a general tax in the same manner as other municipal taxes may be levied and collected for the erection, construction and maintaining of such water-works." And section 5 of the act provides that "the expense of locating, erecting and constructing reservoirs and hydrants for the purpose of fire protection, and the expense of constructing and laying water-main pipes, or such part thereof as may be just and lawful, may be assessed upon and collected from the property and real estate specially benefited thereby, if any, in such manner as may be provided for the making of special assessments for other public improvements in such cities, towns or villages." This act of 1873 applies to cities and villages incorporated under the general law, as well as to those incorporated under special charters. *Dutton* v. *City of Aurora*, 114 Ill. 138.

It is to be noted that under each of these acts the cost of constructing these artesian wells and water-works is to be paid by general taxation, or by borrowing money and issuing bonds therefor. There is, however, this exception : that in the later act provision is made for paying by special assessments for such portions of the improvements as are local in their character and nature, and are of especial benefit to particular property. In this category are parts of the water-main pipes, and local reservoirs and hydrants for local fire protection. This legislation is a plain indication of the legislative intention that the cost and expense of artesian wells and of water-works systems, other than the above-mentioned

items which are of local benefit, shall not be paid for with funds raised by special assessments. *Wright* v. *City of Chicago*, 20 Ill. 252; Sutherland on Stat. Const. sec. 326.

Our conclusions are, that the water-works system provided for in the ordinance of August 4, 1893, is a general and not a local improvement, and that therefore there is no authority in law for making a special assessment on the property of appellees to pay for the same; and also that since the village is expressly given, by statute, power to levy and collect a general tax for the construction of the water-works, it is, by implication, prohibited from making a special assessment to raise funds for that purpose.

The judgment and order of the county court are affirmed.

*Judgment affirmed.*