## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1907.

*(Continued from Volume 125)*

ROBERT YOUNG, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, and KANSAS CITY, Appellants.

Kansas City Court of Appeals, June 3, 1907.

1. STREET RAILWAY: Negligence: Unobstructed Track: Evidence. The evidence relating to the act of a motorman in holding a cable car on Walnut street in Kansas City before starting the descent to Main street, until a certain street cleaning cart and mule were removed from the track, is held to establish beyond a reasonable doubt that the car was not started until the track was cleared and the signal given.

2. MUNICIPAL CORPORATIONS: Governmental Functions: Corporate Functions: Street Cleaning: Negligence. While the street cleaning department of Kansas City may in cleaning its streets incidentally promote the public health, such act is not in itself a govermental function of the city, and the city is liable for the negligence of its agents while cleaning the streets by which persons thereon are injured. [Cases considered.]

3. DAMAGES: Personal Injury: Pleading: Evidence. Under the pleadings it is held evidence relating to the loss of memory and injury to the eyes was properly admitted.

126 App.—1                                                   (1)

4. **EVIDENCE: Expert: Question: Answer.** Though the question to an expert may be improper in calling for a conclusion, yet if the answer merely expresses an opinion the error of the question is cured.

5. **DAMAGES: Personal Injury: Pleading: Evidence: Instruction.** Under the pleadings and the evidence an instruction relating to the question of loss of time and expense for medicine was properly given.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*John H. Lucas, Ben T. Hardin* and *Halbert H. Mc-Cluer* for appellant Metropolitan Street Railway Company.

The court erred in refusing to give defendant railway company's peremptory instruction asked at the close of plaintiff's evidence, and again at the close of all the evidence. Reno v. Railway, 180 Mo. 489; Guyer v. Railway, 174 Mo. 350; Van Bach v. Railway, 171 Mo. 347; Bromg v. Railway, 194 Mo. 551; Saxton v. Railway, 98 Mo. App. 501; Logan v. Railroad, 96 Mo. App. 466; Railroad v. Locke, 14 N. E. 391; Hubbell v. Yonkers, 104 N. Y. 434; Nelson v. Railroad, 30 Minn., 74; Mfg. Co. v. McCormick, 12 Atl. 273.

*Edwin C. Meservey,* City Counselor, and *Francis M. Hayward,* Associate City Counselor, for appellant, Kansas City.

(1) The court erred as to the appellant, Kansas City, in not sustaining its objection to the introduction of any evidence because plaintiff's petition did not state facts sufficient to constitute a cause of action and in not sustaining the instruction of the city in the nature of a demurrer to the evidence on the ground the driver of the cart was engaged in a governmental duty of cleaning the streets. Murtaugh v. St. Louis, 44 Mo. 479; Ulrich

v. St. Louis, 112 Mo. 138; McKenna v. St. Louis, 6 Mo. App. 320; Hill v. Boston, 122 Mass. 344; Tindley v. Salem, 137 Mass. 171; Eastman v. Meredith, 36 N. H. 284; Brown v. Vinalhaven, 65 Me. 402; Condict v. Jersey City, 46 N. J. 157; Nicholson v. Detroit, 129 Mich. 246; Kuehn v. Milwaukee, 92 Wis. 263; Ogg v. Lansing, 35 Ia. 495; Bryant v. St. Paul, 33 Minn. 289; Summers v. Com. Davies County, 103 Ind. 262; Love v. Atlanta, 95 Ga. 129; Conelly v. Nashville, 100 Tenn. 262; O'Rourke v. Sioux Falls, 4 S. Dak. 47; Levin v. Burlington, 129 N. C. 184; Hayes v. Oshkosh, 33 Wis. 314; Moynihan v. Todd, 188 Mass. 301; Kelley v. Boston, 186 Mass. 165; McFadden v. Jewell, 119 Ia. 321; Snider v. St. Paul, 51 Minn. 466. (2) The court erred in the introduction of testimony enlarging the issues beyond the allegation of plaintiff's petition. Thompson v. Railroad, 111 Mo. App. 465; Kuhn v. Freund, 87 Mich. 545. (3) The court erred in permitting a hypothetical question to be asked the medical expert, which substituted the opinion of the expert for the verdict of the jury. Glasgow v. Railway, 191 Mo. 347. (4) The court erred in giving instruction 12 asked by plaintiff and 2 of its own motion. Knight v. Kansas City, 113 Mo. App. 561; Smoot v. Kansas City, 194 Mo. 513; Marr v. Bunker, 92 Mo. App. 651; Railroad v. Railroad, 118 Mo. 599; Bergeman v. Railroad, 104 Mo. 77; Paddock v. Somer, 102 Mo. 226.

*E. W. Shannon* for respondent.

(1) The authorities submitted in appellant's brief are not pertinent to this case; neither can the defendant invoke the last chance doctrine in this case. The danger was there in full view, the car had come to a stop, the gripman was warned by Mr. Brown not to go down that hill, that something was on the track, the driver's back was turned toward the gripman who could see that he was oblivious to any danger and engaged in his duties shovelling dirt into his cart. Brod v. Transit Co., 115

Mo. App. 202; Gallagher v. Edison, Ill. Co., 72 Mo. App. 579; Griffen v. Manice, 82 Am. St. R., 630; 166 N. Y. 188; O'Neil v. Kansas City, 178 Mo. 91; Logan v. Weltner, 180 Mo. 340; Wood v. Railroad, 181 Mo. 450. (2) It has been the settled doctrine in this State that a municipal corporation is bound to keep its streets in a reasonably safe condition for travel. Culverson v. Maryville, 67 Mo. App. 343; Brennan v. St. Louis, 92 Mo. 482; Smith v. St. Joseph, 45 Mo. 449; Carrington v. St. Louis, 89 Mo. 208; Kiley v. City of Kansas, 87 Mo. 103; Denver v. Davis, 20 Am. Rep. 498, 86 Pac. 1027; Denver v. Porter, 126 Fed. 288; Missano v. New York, 6 Am. Neg. Rep. 652, 160 N. Y. 123; Quill v. New York, 5 Am. Neg. Rep. 423, 36 App. Div. 476; Fuchs v. St. Louis, 133 Mo. 168; Donahoe v. Kansas City, 136 Mo. 657; Soulard v. St. Louis, 36 Mo. 546; Thurston v. St. Joseph, 51 Mo. 510; Badgley v. St. Louis, 149 Mo. 122; Bullmaster v. St. Joe, 70 Mo. App. 60; Waltemeyer v. K. C., 71 Mo. App. 354; Jordan v. Hannibal, 87 Mo. 673; Barree v. Cape Girardeau, 197 Mo. 382, 95 S. W. 300. (3) The evidence as to impairment of memory and eye-sight was competent and proper. Fry v. Chapin (Mich.), 7 Am. Neg. Rep. 67, 80 N. W. 797; Quirk v. Siegel Cooper (N. Y.), 6 Am. Neg. Rep. 644; 113 App. Div. 464. (4) The hypothetical question asked Dr. Gayle on cross-examination was not improper; neither are the objections made to the question sufficient to so as to advise counsel and court of what was objectionable to the question, if anything. O'Neil v. Kansas City, 178 Mo. 91; Logan v. Weltner, 180 Mo. 340; Wood v. Railroad, 181 Mo. 450. (5) Instruction numbered 12 followed the petition and directed the jury not to exceed the sum of one hundred dollars. Tandy v. Transit Co., 178 Mo. 240; Blackwell v. Hill, 76 Mo. App. 46; Chartrand v. Railway, 57 Mo. App. 425.

ELLISON, J.—The plaintiff's action was brought to recover damages from the defendants on account of personal injuries received, as he alleges, through their negligence.  He obtained a joint verdict against them.

The defendant railway company operates street railways in Kansas City and the defendant city conducts a street cleaning department.  The street railway in question passes over Ninth street between Walnut and Main streets, between which streets there is quite a steep grade, so steep, as is commonly understood, as to render it impossible to operate electric cars, and therefore what is known as cable cars were at that time being operated on that street.  A cable car is operated by means of a steel cable or rope in the track beneath the surface to which a large metal grip is attached or released from, by means of what may be called a handle to the grip which extends up from the grip through a slot in the track up into the gripcar, where the gripman stands and operates the car.  By manipulation of this handle the gripman can cause it to clasp the cable and thereby start and run the car, and he can also release the grip and thereby stop the car.

The story of the catastrophe as told by the witnesses varies in many details, as is usual when different persons relate their impressions of what took place and how it happened.  There are some matters either not disputed, or so conclusively determined by the evidence as not, properly, to be a subject of controversy.  Plaintiff and two companions were walking west along the sidewalk on the north side of Ninth street down the grade towards Main street at the foot of the hill.  At the alley, in the center of the block, they noticed in the street a man, a mule and a cart, all belonging to the city street cleaning department, and the man was engaged in shovelling into the cart piles of dirt and rubbish which had been swept up off of the street.  They had passed the alley, when the first and only thing plaintiff knew, he

heard a crash and was knocked into a state of unconsciousness by the mule and cart being thrown against or upon him. A flagman was kept at the foot of the hill in Main street whose duty it was to signal cars coming to the top of the hill on Walnut street, if the way was clear for them to come down. On being signalled the gripman would tighten the grip on the cable rope which would have the double effect of carrying the car down the hill at the speed of the rope and holding the car so that it could go no faster than the rope. The record shows by undisputed evidence stated by witnesses of both plaintiff and defendants that after thus starting down the hill, the car could not be stopped. It could not be stopped, of course, without releasing the grip from the rope, and if the grip were released from the rope, the force of gravity was such that the car could not be stopped by the brakes.

When the car in question came from the east to the top of the hill at Walnut street, the city employee with his mule and cart was in the street perhaps half way down the hill. Witnesses differ as to the exact position of all three (the man, the mule and the cart) with reference to the track. We do not think it necessary, nor is it important to settle some of the points of difference. It is certain that when the car came to the top of the hill and just before starting down, the mule and cart, or at least the cart, were either partly on the north track, or sufficiently near it, to be in the way of the descending car. A witness for plaintiff, who was up on Walnut street, testified that he called the gripman's attention to the mule and cart. But that is unimportant in view of the fact that the gripman himself testified that he saw them. The evidence shows that by some means (whether by the gripman ringing the bell makes no difference) the man's attention was attracted to the car waiting to start down and to his mule and cart being too near the track so he took hold of the bridle and led

the mule diagonally away, at the same time signalling the gripman either with his hand or shovel to come on. The flagman at the bottom of the hill also signalled him to start.  He tightened his grip on the rope and started. But when the man had pulled the mule out of the way he turned to throw a shovel of dirt into the cart, and as he turned, the mule moved back towards the track and thus the collision occurred which resulted in hoisting mule and cart onto plaintiff who was descending the sidewalk near the curb as already stated.  That the gripman did not start down the hill until he received the signal from the man with the mule, we regard as an established fact.  Several witnesses saw the signal given. The gripman and conductor also saw it.  The gripman testified that he started up in answer to it and the man with the mule testified that he gave it. Plaintiff's chief witness, who was up at Walnut street, stated that he noticed the car after leaving the east side of Walnut street stop on the west side right on the brow of the hill, and that he "looked down the hill to see what he (the gripman) was stopping for." He saw the man, mule and cart and called the gripman's attention.  He was not looking down in that direction all the time and said he did not see the signal given, but that it might have been and he not see it.  It seems incredible, that after stopping, the gripman would deliberately start up without a signal, knowing the track was obstructed and that he could not stop.  The evidence establishes beyond any reasonable question that the car was not started down the hill until the track was cleared and the signal given. It follows therefore that the demurrer to the evidence against the defendant street car company ought to have been sustained.

It was the duty of the defendant city to keep its streets clean.  But it has interposed the general defense that it was not liable for the negligence of its servants in performing that duty.  That cleaning streets of a city

is a governmental duty in the negligent performance of which a city is not liable. Counsel quote from Murtaugh v. St. Louis, 44 Mo. 479, as follows: "Where the officer or servant of a municipal corporation is in the exercise of a power conferred upon the corporation for its private benefit and injury ensues from the negligence or misfeasance of such officer or servant, the corporation is liable, as in the case of private corporations or parties; but when the acts or omissions complained of were done or omitted in the exercise of a corporate franchise conferred upon the corporation for the public good and not for private advantage, then the corporation is not liable for the consequences of such acts or omissions on the part of its officers and servants." That was a case where a patient was injured at a city hospital and it was held the city was not liable. The case, while a proper citation on the general question, is not applicable to the question here presented. The defendant city has however cited cases which bear out its general contention. Among those are Love v. Atlanta, 95 Ga. 129; McFadden v. Jewell, 119 Iowa 321; Connelly v. Nashville, 100 Tenn. 262; Bryant v. St. Paul, 33 Minn. 289.

But in our opinion the better rule is that a city is liable for the negligence of its servants in cleaning its streets. In some jurisdictions a municipality is not liable for the non-repair of its streets, nor for negligence while engaged in contructing sewers. But the other rule has long been established with us. [Ely v. St. Louis, 181 Mo. 723; Donahoe v. Kansas City, 136 Mo. 657.] Cleaning the streets consists in removing the dirt and rubbish therefrom. In the instance here involved the city's servant was engaged in carting away piles of dirt which had been gathered by other servants in advance of him. It was the duty of the city to clear the streets not only for proper appearances but so as to keep them free and safe for travel; and there can be no doubt but that if it had left piles of dirt unguarded,

and some one passing, while exercising care, was injured in person or property by reason of the obstruction the city would be liable. There are a variety of cases holding a municipality liable · for such obstructions. [Badgley v. St. Louis, 149 Mo. 122.] The fact that cleaning streets is conducive to public health is a mere incident and does not affect the question. Sewers are always, and properly repaired streets are frequently, conducive to the health of congested populations, yet that does not prevent the application of ordinary rules of liability for negligence as applied to either.

But defendant bases its argument on the ground that the city was engaged in work exclusively for the public health and as such was in the performance of a governmental function for which liability does not attach. There are many cases in this State and elsewhere deciding (indeed, it is generally conceded to be law) that for those things which the city does in its governmental capacity for the general good as distinguished from its private capacity for its private advancement, no liability attaches. In this State it has been held that the city is not liable for failure to abate a nuisance, though it had the power to do so. [Armstrong v. Brunswick, 79 Mo. 319; Kiley v. Kansas City, 87 Mo. 103.] Nor for negligent act of its officers in the execution of powers conferred upon the city for the public good and not for private corporate advantage, Carrington v. St. Louis, 89 Mo. 208; Ulrich v. St. Louis, 112 Mo. 138; such as the negligent failure of the officers of a fire department to extinguish a fire, Heller v. Sedalia, 53 Mo. 159. The reasons given for liability and for non-liability of municipal corporations we admit are not logical or consistent. Some of the reasons given for non-liability will apply just as forcibly to cases where liability is asserted and *vice versa*. It is logical and in harmony with authority to say, as was said in Ely v. St. Louis, supra, that a municipality is

not liable for what it does or omits to do in its governmental capacity, in deciding whether a street shall or shall not be opened, or what part of it shall be improved, but that it is liable for its ministerial act in constructing, repairing or improving such street. Yet the same statement of the law is not always applied to other cases which would seem to call for a like character of reasoning. There is this however to say in behalf of the cases holding the views expressed in this State on this subject, that while the reasons given for them cannot always be reconciled with much degree of consistency, they are, very generally at least, correctly decided, and being so, we cannot afford to be too particular as to their being consistent.

In this case, the city was not acting in a governmental capacity for the general public good, in protecting the health of the community, as perhaps it might have been had the act complained of been the establishment of a pesthouse, or the enforcement of ordinances against contagious diseases, and the like. Here the servant of the city was engaged in removing dirt from the streets which, if left upon them, might make them unsafe, or at least, inconvenient for travel. Mud and dirt, in some situations, result in injury to travellers and render the city liable in damages. In this case, the servant was engaged in removing piles of dirt, which, as just intimated, if left remaining, would have rendered the city liable if damage had been caused by them. Thus considered, we believe that in holding the city liable, we are not opposing numerous cases in counsel's brief cited for the purpose of freeing the city from responsibility for the acts of its officers or servants in protecting the public health. But even in determining the general question, the fact that the act may be helpful to the general health, or may, in some remote degree, be referable to governmental regulation, ought not to control. Those features of the case should be considered more as inci-

dental than as the sole purpose. In the City of Denver v. Porter, 61 U. S. Cir. Ct. of App. 173, it was said that "In almost all affairs of purely local concern some in- direct relation may be traced to a matter of health, safe- ty, or other subject of governmental cognizance. The test is not that of casual or incidental connection. If the duty in question is substantially one of local or cor- porate nature, the city cannot escape responsibility for its careful performance because it may, in' some general way also relate to a function of government." So in the City of Denver v. Davis, 86 Pac. 1027, it was held that the city was liable for a fire resulting from a servant of the health department depositing ashes, paper, straw, rags and like material upon a dumping ground, the maintenance of such ground being for the convenience of the inhabitants. The case of Missano v. The Mayor, 160 N. Y. 123, is much in point. The action there was to recover damages for the death of a child who was run over and killed by a horse attached to an ash cart of the street cleaning department. The city was held liable. It was the duty of the city in that case, as in this, to keep its streets clean; and the court said that "The fact that the discharge of this duty might inci- dently benefit the public health did not make the acts of the commissioner of street cleaning a public func- tion. It is clear upon principle and authority that the City of New York, in the ordinary and usual care of its streets, both as to repairs and cleanliness, is acting in the discharge of a special power granted to it by the legislature, in the exercise of which it is a legal individ- ual, as distinguished from its governmental functions when it acts as a sovereign. [Maxmilian v. Mayor, etc., 62 N. Y. 164."] To the same effect is Dumping Boat v. Mayor, 40 Fed. 50.

In this court there was a case involving the liabil- ity of a city to a servant for personal injury while acting as fireman at a steam plant for the purpose of providing

electricity for the city's electric light. We held the act of providing electric light to be for the peculiar local benefit of the city and not for the general public good and not involving general governmental power. [Bullmaster v. St. Joseph, 70 Mo. App. 60.] The result of our consideration of the authorities as applied to the case is to overrule the defendant city in its objections to liability.

But the city objected to evidence showing defendant's loss of memory and injury to his eyes, on the ground that such matter was not covered by the petition. We think it was. There was an allegation of injury to the head, eyes, spinal cord and muscles and ligaments surrounding the same, the extent of which could not then be known.

A physician was asked a hypothetical question as to what he would attribute plaintiff's nervous condition, whether to the accident, which was objected to as calling for a conclusion and invading the province of the jury upon the authority of Glasgow v. Railroad, 191 Mo. 347. But whatever objection there may have been to the form of the question was cured or rendered harmless by the answer which was, "That is possible." He therefore only testified that it was possible for the accident to have resulted in the injury. He did not say that it did result.

Objection is made to an instruction for submitting question of loss of time and of expenditure for medicine. We think there was evidence from which the jury was bound to infer a loss of time. As to medicine the petition alleged that he incurred expense "for medicine, medical care and attention." There was proof of application of medicine and for medical care and attention with the charge therefor. We think the objections are not well taken. Concerning the objection as to the mule being unattended, we regard that as of no consequence and of not working any possible harm against

the merits of the action and therefore not reversible error.

The result following from the foregoing views is that we reverse the judgment as to the defendant Metropolitan Street Railway Company and affirm it as to the defendant city. All concur.