## ALEX R. McLEOD v. CITY OF DULUTH AND ANOTHER.[1]

March 30, 1928.

No. 26,491.

**Defendant city was liable for its employe's negligence in flushing a paved street.**

Upon the facts stated in the opinion the city was engaged in flushing a paved street for the purpose of keeping it in a proper condition for public use—a corporate as distinguished from a public function—and was liable for the negligence of its employe while engaged therein.

Governmental, 28 C. J. p. 753 n. 6.
Municipal Corporations, 43 C. J. p. 926 n. 28; p. 973 n. 20.
Public, 32 Cyc. p. 748 n. 97.

[1]Reported in 218 N. W. 892.

See note in 14 A. L. R. 1477; 32 A. L. R. 989; 19 R. C. L. 1127; 4 R. C. L. Supp. 1310; 6 R. C. L. Supp. 1162.
See note in L. R. A. 1915C, 741.

Defendant city appealed from an order of the district court for St. Louis county, Grannis, J. denying its alternative motion for judgment or a new trial. Affirmed.

*John B. Richards,* City Attorney, and *Harry E. Weinberg,* Assistant City Attorney, for appellant.

*George B. Sjoselius,* for respondent.

WILSON, C. J.

Defendant city appealed from an order denying its alternative motion for judgment non obstante or a new trial.

Plaintiff was injured by the negligence of a city employe who was operating a street flusher on a paved street at night. The sole question presented is whether the city in flushing the street was engaged in a governmental function. If so, there is no liability. If not, there is. In other words, was it serving the public or itself?

The authorities hold that if the flushing of a street is authorized and done solely for the comfort and health of the general public it is a governmental act, as distinguished from a private and corporate act, and there can be no recovery. Harris v. District of Columbia, 256 U. S. 650, 41 S. Ct. 610, 65 L. ed. 1146, 14 A. L. R. 1471, and cases collected on p. 1477; Conelly v. City of Nashville, 100 Tenn. 262, 46 S. W. 565; Kippes v. City of Louisville, 140 Ky. 423, 131 S. W. 184, 30 L.R.A.(N.S.) 1161; Bruhnke v. City of La Crosse, 155 Wis. 485, 144 N. W. 1100, 50 L.R.A.(N.S.) 1147; City of Savannah v. Jordan, 142 Ga. 409, 83 S. E. 109, L. R. A. 1915C, 741, Ann. Cas. 1916C, 240. Granting health as the primary purpose, it may nevertheless afford such special benefit to adjoining property as to make such property more valuable and hence support a special assessment therefor.

Where such street flushing is not done primarily in the interest and promotion of the public health but in the discharge of the

general duty of caring for the street—keeping it safe for use—even though it is incidentally beneficial to the public health, recovery may be had. City of Denver v. Maurer, 47 Colo. 209, 106 P. 875; Missano v. The Mayor, 160 N. Y. 123, 54 N. E. 744; City of Pass Christian v. Fernandez, 100 Miss. 76, 56 So. 329; Young v. Met. St. Ry. Co. 126 Mo. App. 1, 103 S. W. 135; 14 A. L. R. 1474; Kelleher v. City of Newburyport, 227 Mass. 462, 116 N. E. 806, L. R. A. 1917F, 710; Hoover v. Fulton, 177 Mo. App. 95, 163 S. W. 292; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909.

In this state the rule is well established that the city is under legal obligation to exercise reasonable care to keep and maintain the streets in safe condition for public use, and is liable in its corporate character for a negligent failure of compliance therewith. In the maintenance of the street it serves itself by guarding against the consequences of defective streets. It therefore becomes necessary to ascertain the purpose which prompted the city of Duluth to flush its streets in order to determine the capacity in which it acted.

The sprinkling of a street is a local improvement within the meaning of art. 9, § 1, of the state constitution. State ex rel. Stateler v. Reis, 38 Minn. 371, 38 N. W. 97. The city of Duluth has a home rule charter and the usual health department, but the charter is silent in reference to street sprinkling. It expressly provides that the health officer "shall enforce the laws of the state, the provisions of this charter, and ordinances and regulations of the city relative to the public health." But no claim is made that the health officer was directing the street flushing here involved. Section 61 of the chapter on "Local Improvements and Special Assessments" in the charter authorizes the council to "order the construction of any sidewalk or sewer, or the sprinkling of any highway, which it deems necessary for public convenience or safety, and may cause the cost of such construction or sprinkling, or any portion of such cost, to be assessed against property specially benefited thereby." The charter does not say that the sprinkling may be done for the advancement of the public health but "for public convenience or safety." Undoubtedly the health department or the

council could, regardless of the provisions of the charter, cause the paved streets to be flushed in the interest of the public health. But such is not the officially declared purpose. The act of flushing in the instant case is apparently the usual and ordinary one performed under normal health conditions and perhaps with little thought as to the technical legal reason therefor. It would seem that it was done under the direction of the council. It is the character of the service involved which must serve as the criterion by which to govern controversies such as this. But the circumstance of this provision's being so located in the fundamental law of the city may be taken into consideration in attempting to find the motive that actuated the service. Furthermore, if the language of the charter shows the purpose, we cannot disregard it.

"Convenience" as used in the charter cannot have reference to health. The most reasonable construction of the use of the word "safety" is to apply it to the "safety" of the public incident to traveling upon the street. We may take judicial notice of the fact that the modern street flusher not only facilitates the handling of dirt and rubbish but actually removes light rubbish which endangers the "safety" of the public. The street flusher protects the "safety" of the public by removing mud which causes motor vehicles to skid. It also removes foreign matter such as stones, dirt, paper, wood, coal, banana peelings and other things which accumulate upon city streets, all of which have a tendency to expose the public to unnecessary danger. In the absence of flushing much mud and dirt soon accumulate on a paved street. It seems to us that these are the primary dangers which the charter intended to guard against when it included sprinkling as a means of protecting the "public convenience or safety."

There is another circumstance of importance. The old-fashioned street sprinkler was a device which scattered water in a way similar to a light rain. Its purpose was to settle the dust. Such a sprinkler was doubtless in vogue when State ex rel. Stateler v. Reis, 38 Minn. 371, 38 N. W. 97, was decided. The term "sprinkling" as defined by the legislature and as applicable to streets in certain

municipalities includes "sprinkling, flushing, saturating or treating the surface of streets, * * * with water, oil or any kind of fluid, mineral or other substance." L. 1923, p. 29, c. 32, § 2. This action involves a street "flusher." It is referred to in the record as such and also as a "wagon" and as a "sprinkler." We take judicial notice of the fact that a flusher does more than "sprinkle" in the common acceptance of that word. It is constructed to apply water with some force. Its use is perhaps restricted to paved streets. The man in charge of its operation in this case says he was employed in "washing city streets." This meant to clean them. What for? For the public health or to keep the street in a safe condition for travel?

In our opinion the act of street sprinkling as authorized by the charter, unlike the duties of the departments of health, charities, fire and police, although performed incidentally in the interest of the public health, is more immediately performed in the interest of the corporation which is burdened with the constant duty and obligation of maintaining its streets in suitable condition for the public travel. The use of the street flusher is the modern way of cleaning the paved street of dirt, rubbish and obstructions. Were it hauled away by a man with a horse and cart it would not be a governmental function. City of Pass Christian v. Fernandez, 100 Miss. 76, 56 So. 329; Young v. Met. St. Ry. Co. 126 Mo. App. 1, 103 S. W. 135.

A public function is one which is exercised by virtue of certain attributes of sovereignty delegated to a city for the welfare and protection of its inhabitants or the general public. In the performance of a corporate function the city stands upon the same footing as a private corporation. It then acts for itself and not for the public. The fact that the flushing of the street is conducive to the public health, in preventing the spread of dust and germs and otherwise, is a beneficial incident to the proper maintenance of the street. Sewers, watermains and properly repaired streets are frequently conducive to the health of congested populations, yet that does not prevent the application of ordinary rules of liability for negligence when it logically and fairly appears that the primary

purpose is to maintain the street in a proper state of repair or condition for the "safety" of the public in the ordinary use thereof.

Sprinkling of streets is desirable but not an imperative measure in normal times for public health. Many people both in urban and rural districts are subjected to dust without serious health impairment resulting. The comfort of those along a dusty thoroughfare is quite sufficient reason to make sprinkling desirable even though it involves a special assessment therefor. It saves the housewife much annoyance and labor at dusting. It may save such residents much inconvenience in protecting their comfort, and it materially promotes their happiness. Such personal benefits to the adjoining property owner have long been recognized. It actually makes the adjoining property more desirable and more valuable. For this reason it is regarded as a local improvement and specially assessed against the property owner. This would never be done if the expenditure therefor were made in the interest of the public health.

A function is governmental when it is for all the people of the community. But, as indicated, we have said sprinkling is a local improvement; and in Duluth it may be assessed against the adjoining property as a benefit thereto. Whether it in fact was in this case we do not know. Its direct benefit is to only a part of the community, though if it prevents the spread of contagious or infectious disease it would indirectly benefit all.

The claim that a discretionary act is a governmental function has little application because the city has the positive duty to care for the street. The discretion here involved permits the city to adopt such means as it sees fit to accomplish that end. The duty to properly maintain the street is positive. The means to be adopted to that end may be discretionary. It may or it may not resort to street flushing. It may prefer to use men and shovels, but it must maintain the street in proper condition.

The flusher does more than sprinkle. It washes away germs detrimental to health, while some other method of sprinkling might merely stay their aggression. Whatever mode may be adopted, we take judicial notice of the fact that the primary purpose of sprin-

kling is to fight dust which may be infested with noxious and pernicious germs; that such dust, put in motion by the many motor vehicles of this age, is constantly being carried about, causing illness, disease and perhaps death. The germ danger may at times be overworked, but its possibilities are tremendous. Dust even without germs is detrimental to health. Whatever may be said as to the aid or influence of any mode of sprinkling to or upon street maintenance, it must be acknowledged that the ordinary and usual element inciting street sprinkling is health. McCrary v. City of Rome, 29 Ga. App. 384, 115 S. E. 283; City of Savannah v. Jordan, 142 Ga. 409, 83 S. E. 109, L. R. A. 1915C, 741, Ann. Cas. 1916C, 240; Scibilia v. City of Philadelphia, 279 Pa. 549, 124 A. 273, 32 A. L. R. 981; Kippes v. City of Louisville, 140 Ky. 423, 131 S. W. 184, 30 L.R.A.(N.S.) 1161. The court in Maydwell v. City of Louisville, 116 Ky. 885, 888, 76 S. W. 1091, 63 L. R. A. 655, 105 A. S. R. 245, said:

"For the protection of the public health, nuisances are abated, streets and sewers are flushed and cleaned. * * * It cannot be successfully denied that the dust upon the streets of large cities is a fruitful source of disease, as well as annoyance, to citizens. The same principle which authorizes the streets to be cleaned for the purpose of preventing noisome odors and epidemics of disease authorizes them to be sprinkled."

The fact that the adjoining property owner gets a special benefit for which he may be assessed does not do away with the important governmental function. Local advantages may and often do inure to resident property owners near public parks, but such parks remain public projects.

Flushing, though included in the term "sprinkling," has more characteristics which might make its use available to keep the street in a proper state of repair than other usual or ordinary methods of sprinkling. In fact when sprinkling is done by the ordinary sprinkler or by the application of oil, mineral, or other substances which subdue but do not remove, we see little basis to support the contention that its purpose is for street maintenance from the

standpoint of repair. Such claim is theoretical. The construction of the law most favorable to plaintiff is that the purpose of sprinkling is to make the street more comfortable for travelers, adjoining residents, and others who are thereby protected from exposure to dust, which is injurious to health whether it contains germs or not. The public health element is always present. The personal element which supports an assessment for special benefits is not to control. In the absence of an established intention or purpose to the contrary, we hold as a matter of law that street "sprinkling" is done in the interest of the public health. But in the instant case the record, with its peculiar circumstances, supports the conclusion that the intention and purpose to the contrary has been established.

We conclude that in the instant case the city was acting in a corporate capacity—acting for itself—and was not engaged in a governmental function.

Affirmed.

STONE, J. (dissenting).

Street dust is so much of a menace to public health that I should suppose it a duty of government to control and prevent it so far as possible. Also, clean streets are so necessary in the interest of public health that the process of keeping them clean, in my judgment, should be considered a governmental function and consequently a municipality held not liable for negligence of an employe while engaged in flushing its streets.