Pasquale Missano et al., as Administrators of Rosina Missano, Deceased, Appellants, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

1. City of New York — Statutory Notice of Intention to Sue Municipality for Personal Injury — Failure of Plaintiff to File Notice with Corporation Counsel not Fatal to Action, if Corporation Counsel in Fact Received and Filed Notice. A notice which in other respects complied with chapter 572 of the Laws of 1886, requiring the filing with the corporation counsel of a notice of the intention to commence the action, as a condition to the maintenance of an action against the municipality for damages for a personal injury, is not prevented from being a substantial compliance with the statute by the facts that it purported to be given in compliance with section 1104 of the New York Consolidation Act (L. 1882, ch. 410), and was addressed to and filed with the comptroller, but was by him sent to the corporation counsel, who filed it and acted upon it.

2. Status of City in Cleaning Streets. The city of New York, in the ordinary and usual care of its streets, both as to repairs and cleanliness, acts in the discharge of a special power granted to it by the Legislature, in the exercise of which it is a legal individual, as distinguished from its governmental functions when it acts as a sovereign.

3. Liability for Negligence of Employees in Department of Street Cleaning. The city of New York is liable for the negligent acts of its employees in its department of street cleaning.

*Missano* v. *The Mayor*, 17 App. Div. 536, reversed.

(Argued June 8, 1899; decided October 3, 1899.)

· APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 1, 1897, upon an order reversing a judgment in favor of plaintiffs entered upon a verdict and an order denying a motion for a new trial, and dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Abram Kling* and *M. P. O'Connor* for appellants. The municipality is liable for the acts and omissions of the officers and employees of the department of street cleaning. (Dillon on Mun. Corp. [4th ed.] §§ 56, 58, 64, 66, 974, 980, 1017, 1018, 1023 ; ·*Conrad* v. *Vil. of Ithaca,* 16 N. Y. 159; *N. Y. & B. S. M. & L. Co.* v. *City of Brooklyn,* 71 N. Y. 580; *Platz* v. *City of Cohoes,* 89 N. Y. 219 ; *Bieling* v. *City of Brooklyn,* 120 N. Y. 98; *Pettingill* v. *City of Yonkers,* 116 N. Y. 558 ; *People ex rel.* v. *Bd. of Canvassers,* 129 N. Y. 367 ; *Walsh* v. *Mayor, etc.,* 107 N. Y. 220 ; *Wilson* v. *City of Troy,* 135 N. Y. 96 ; *Ehrgott* v. *Mayor, etc.,* 96 N. Y. 264.) The notice of intention to sue was duly filed with the corporation counsel in substantial compliance with the requirements of chapter 572 of the Laws of 1886. ( *Werner* v. *City of Rochester,* 77 Hun, 33 ; *Sullivan* v. *City of Syracuse,* 77 Hun, 440 ; *Cross* v. *City of Elmira,* 86 Hun, 467 ; *Norris* v. *M. P. Co.,* 19 Blatchf. 201.) The corporation counsel, by filing in his office the notice of intention to sue, and examining the plaintiff under the same, waived any and all irregularities which may have existed in its service. (*Buell* v. *Trustees of Lockport,* 3 N. Y. 197; *Tombs* v. *R. & S. R. R. Co.,* 18 Barb. 583 ; *Matter of Coleman,* 111 N. Y. 220 ; *Matter of N. Y., L. & W. R. R. Co.,* 98 N. Y. 447 ; *Foley* v. *Royal Arcanum,* 151 N. Y. 196 ; *Allen* v. *Comrs., etc.,* 38 N. Y. 312; *Sweet* v. *City of Buffalo,* 92 Hun, 404 ; *Titus* v. *G. F. Ins. Co.,* 81 N. Y. 410 ; *Weed* v. *H. B. F. Ins. Co.,* 133 N. Y. 394.) Defendant's negligence was the proximate cause of the accident. (*Murphy* v. *Orr,* 96 N. Y. 14; *Allison* v. *Vil. of Middletown,* 101 N. Y. 667 ; *Stackus* v. *N. Y. C. & H. R.*

*R. R. Co.*, 79 N. Y. 461; *Fandel* v. *T. A. R. Co.*, 45 N. Y. Supp. 462; *McGuire* v. *T. A. R. R. Co.*, 9 App. Div. 529.)

*John Whalen, Corporation Counsel (Theodore Connoly* of counsel), for respondent. Plaintiffs failed to comply with chapter 572 of the Laws of 1886, as no notice of intention to commence the action was ever filed with the counsel to the corporation. (*Babcock* v. *Mayor, etc.*, 56 Hun, 196; *Dawson* v. *City of Troy*, 49 Hun, 322.) The notice required to be filed with the comptroller is not a notice of the intention to sue. (L. 1882, ch. 410, §§ 123, 1104.) Filing with the corporation counsel the notice of intention to commence an action is a condition precedent to the maintenance of the action. (*Curry* v. *City of Buffalo*, 135 N. Y. 366; L. 1886, ch. 572, § 1; *Merz* v. *City of Brooklyn*, 33 N. Y. S. R. 577; 128 N. Y. 617; *Bauer* v. *City of Buffalo*, 44 N. Y. S. R. 814; *Babcock* v. *Mayor, etc.*, 56 Hun, 196; *Dawson* v. *City of Troy*, 49 Hun, 322; *Frankel* v. *Mayor, etc.*, 18 N. Y. S. R. 241; *Foley* v. *Mayor, etc.*, 1 App. Div. 586; *Patterson* v. *City of Brooklyn*, 6 App. Div. 127; *Kellogg* v. *Mayor, etc.*, 15 App. Div. 326; *Sheehy* v. *City of New York*, 29 App. Div. 263; *Freligh* v. *Vil. of Saugerties*, 70 Hun, 589.) As a condition precedent to the maintenance of the action, the filing of this notice with the counsel to the corporation must be alleged in the complaint and proved on the trial. (*Merz* v. *City of Brooklyn*, 128 N. Y. 617; *Frankel* v. *Mayor, etc.*, 18 N. Y. S. R. 241; *Lincoln* v. *Grant*, 38 Neb. 369; Code Civ. Pro. § 499; *Weeks* v. *O'Brien*, 141 N. Y. 199.) The statute includes actions commenced within six months from the time the cause of action accrued. (*Bauer* v. *City of Buffalo*, 44 N. Y. S. R. 814; *Dawson* v. *City of Troy*, 49 Hun, 322.) There was no filing of the notice with the counsel to the corporation as required by law. (Code Civ. Pro. § 797; *Gates* v. *State*, 128 N. Y. 221; *Burford* v. *Mayor, etc.*, 26 App. Div. 225; *Crouse* v. *Johnson*, 65 Hun, 337; *City of Denver* v. *Saulcey*, 38 Pac. Rep. 1098; *Garlick* v. *Sangster*, 9 Bing. 46; *Shulte* v. *M. F. N. Bank*, 34 Minn. 48;

*Lawson* v. *Falls*, 6 Ind. 309 ; *Pfirmann* v. *Henkel*, 1 Bradw. 145 ; *Phillips* v. *Beenes*, 38 Ala. 251 ; *Peterson* v. *Taylor*, 15 Ga. 484.) A municipal corporation, while engaged in the performance of a public service in which it has no particular interest; and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law, for the general welfare of the inhabitants or of the community, is not liable for the torts of its officers and employees. (Dill. on Mun. Corp. [4th ed.] § 974; 2 Thomp. on Neg. 737, § 5 ; *Martin* v. *Mayor*, etc., 1 Hill, 545 ; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Bank of Chemung* v. *City of Elmira*, 53 N. Y. 53 ; *Maxmilian* v. *Mayor*, etc., 62 N. Y. 160 ; *Weismer* v. *Vil. of Douglas*, 64 N. Y. 105 ; *Ham.* v. *Mayor*, etc., 70 N. Y. 459 ; *Horton* v. *Town of Thompson*, 71 N. Y. 524; *Smith* v. *City of Rochester*, 76 N. Y. 506 ; *Bryant* v. *St. Paul*, 33 Minn. 289 ; *Jones* v. *Mayor*, etc., 9 N. Y. S. R. 247.) The statute directing the removal of sweepings, ashes and garbage from the streets is a police regulation performed purely for the public service and general welfare, and not for the corporate benefit of the city. (*Connelly* v. *Nashville*, 100 Tenn. 262; *Condict* v. *Jersey City*, 46 N. J. L. 157 ; *Love* v. *City of Atlanta*, 95 Ga. 129 ; *Wild* v. *Patterson*, 47 N. J. L. 406 ; *Kuehn* v. *City of Milwaukee*, 92 Wis. 263.)

Bartlett, J.   This action was brought to recover damages for the death of a child, who was run over and killed by a horse attached to an ash cart of the street cleaning department of the defendant.

Two questions were argued before us on this appeal.  The first, whether plaintiffs complied with the provisions of chapter 572 of the Laws of 1886, requiring a filing with the corporation counsel of a notice of intention to commence the action ; the second, whether the city of New York is liable for the alleged negligent act of an employee of the department of street cleaning ?

The first question only was considered by the learned

Appellate Division ; that court held the requisite notice was not served and dismissed the complaint.

We agree with the opinion of Judge GRAY as to the first question, wherein he holds that the notice given by plaintiffs of their intention to commence this action was a substantial compliance with the statute.

We also agree with Judge GRAY that the case on the merits was properly submitted to the jury, but are unable to adopt his conclusion that the judgment should be affirmed on the ground that the city of New York is not liable for the negligent acts of the employees in its department of street cleaning.

The weight of authority in this state establishes, we think, the liability of the defendant. This subject has been discussed at length by learned judges and text writers, so that a brief reference to the principles and authorities involved is all that is necessary at this time.

Judge Dillon points out in his work on Municipal Corporations (fourth edition) that such corporations are possessed of dual powers ; the one governmental, legislative or public, and the other proprietary or private (§ 66) ; that the care of the streets is within the latter classification (§ 980).

In *Conrad* v. *Trustees of the Village of Ithaca* (16 N. Y. 158) it was held that where the trustees of the village were made by its charter commissioners of highways they were to be regarded, in respect to that function, not as independent public officers, but as the agents of the corporation, so as to make the latter civilly responsible for their acts of omission, according to the law of master and servant.

In a note to the case last cited is published an opinion by Judge SELDEN in *Weet* v. *Trustees of the Village of Brockport*, wherein he points out the principle that lies at the basis of the rule which makes a municipal corporation liable under the maxim of *respondeat superior* as follows : " That whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in case

of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases the contract made with the sovereign power is deemed to enure to the benefit of every individual interested in its performance."

This liability of the municipality as to the care of the streets was again recognized by this court in *Ehrgott* v. *Mayor, etc., of City of New York* (96 N. Y. 264).

Judge EARL, after citing *Conrad* v. *Trustees of Ithaca* (16 N. Y. 158), *Requa* v. *City of Rochester* (45 N. Y. 129), *Hutson* v. *Mayor, etc.* (9 N. Y. 163), *Davenport* v. *Ruckman* (37 N. Y. 568), *Hume* v. *Mayor, etc.* (74 N. Y. 264), observed that the rule has been somewhat criticised, but that "it has the sanction of a wise public policy, the support of good reasons, and that its operation is generally just and beneficent." This principle has been recognized in many other cases in this state that need not be cited.

It has also been approved by the Supreme Court of the United States in *Barnes* v. *District of Columbia* (91 U. S. 540), and by the Circuit Court of the United States in *Barney Dumping-Boat Company et al.* v. *Mayor, etc., of City of New York* (40 Fed. Rep. 50). In the latter case, Judge WALLACE, referring to the commissioner of street cleaning, aptly says: "His duties, unlike those of the officers of the departments of health, charities, fire and police, although performed incidentally in the interest of the public health, are more immediately performed in the interest of the corporation itself, which is charged with the obligation of maintaining its streets in fit and suitable condition for the use of those who resort to them."

The case of *Maxmilian* v. *Mayor, etc., of New York* (62 N. Y. 160) is cited as an authority for the defendant.

It is a leading case defining the limits of municipal power, public and private, and is in accord with the authorities we have cited.

The question there presented was whether the commissioners of public charities and corrections performed their duties for the especial benefit of the city of New York in its pro-

prietary or private interests, or whether they exercised a public function as an organ of the sovereign power "in the due discharge of the duty of the state in that locality to the poor, the crazed, the wicked."

It was held that the commissioners were clothed with public powers, being called upon to maintain a vast system of charity and penal administration representing the sovereignty of the state.

Judge FOLGER, in his opinion, pointed out that the cases cited by plaintiff were to be distinguished, as they rested upon principles in harmony with those announced by the court; he referred particularly to *Conrad* v. *Trustees of Ithaca* (16 N. Y. 158) as an illustration of the duty of a municipal corporation to care for its streets when acting as any other private owner of property.

There are many duties imposed upon a municipality that may be discharged by a commissioner or superintendent who hires and discharges sub-agents and servants, but this in no way relieves it from responsibility for the negligent acts of those so employed.

At the time this alleged cause of action accrued it was the duty of the city of New York to keep its streets in repair and to see that they were thoroughly cleaned and kept clean at all times; also to remove the sweepings, ashes and garbage as often as the public health and use of the streets required it to be done. (Consolidation Act, § 704, as amended by chap. 269, Laws of 1892.)

The fact that the discharge of this duty might incidentally benefit the public health did not make the acts of the commissioner of street cleaning a public function.

It is clear upon principle and authority that the city of New York, in the ordinary and usual care of its streets, both as to repairs and cleanliness, is acting in the discharge of a special power granted to it by the legislature, in the exercise of which it is a legal individual, as distinguished from its governmental functions when it acts as a sovereign. (*Maxmilian* v. *Mayor, etc.,* 62 N. Y. 164.)

17

The judgment and order appealed from should be reversed and the judgment of the Trial Term affirmed, with costs in all the courts.

Gray, J. (dissenting in part). This action was brought to recover damages for the death of a child, which the plaintiffs allege to have been caused through the negligence of the defendant. They allege that the defendant was the owner of certain horses and carts, which were used for the purpose of gathering ashes, garbage and refuse from its streets, and that, upon the occasion in question, one of the carts was being drawn so negligently as to run over the child and to cause injuries which resulted in her death. The complaint also alleges that, prior to the commencement of the action, a notice of intention to bring the same, embodying the requirements of chapter 572 of the Laws of 1886, was duly filed with the proper officer of the defendant. The answer denied the filing by the plaintiffs of the notice and put in issue the other allegations, which charged the defendant with negligence. When the cause came on for trial, motions were made to dismiss the complaint upon two specific grounds. It having been admitted that the cart, by which the injury was caused, belonged to the street cleaning department of the defendant, the defendant's counsel moved to dismiss the complaint upon the ground that there was no cause of action against the defendant. This motion was denied and the defendant excepted. The point was then made that the plaintiffs had failed to comply with the requirements of the act of 1886, with respect to the filing of a notice of the intention to sue with the counsel to the corporation. The paper being produced by the defendant, which the plaintiffs had caused to be filed prior to the commencement of the action, it appeared therefrom that it was addressed to the comptroller of the city of New York and read that " In compliance with section 1104 of the Consolidation Act of New York City, we serve you with notice of our intention to bring an action for damages for five thousand dollars against the Mayor, Aldermen and Commonalty of the City of New

York" and it proceeded, further, to give the date and facts of the occurrence, which resulted in the death of the plaintiffs' intestate. It was admitted by the defendant that the notice, after being received by the comptroller, was sent by him to the corporation counsel and was filed by the latter in his office. It was also admitted by the defendant that, subsequently to the receipt by the corporation counsel of the notice, "the defendant duly gave notice to the plaintiffs to appear and submit to an examination as to the claim, of which they gave the city notice of their intention, and in pursuance of that the plaintiffs did appear before the counsel to the corporation and did submit to an examination by the said counsel to the corporation." In fact, this notice to the plaintiffs to appear was given by the comptroller. Upon these facts, the trial court ruled that the notice of the plaintiffs was filed with the corporation counsel, as required by the act of 1886 and the defendant excepted to the ruling. The trial resulted in a verdict for the plaintiffs; but, upon appeal to the Appellate Division in the first department, the judgment, which had been entered upon the verdict, was reversed and the complaint was dismissed. From the order of reversal and the judgment entered thereon the plaintiffs appealed to this court.

So far as the merits are concerned, the facts brought out upon the trial were such as to make the case one for the decision of a jury; but the exceptions to the refusal of the trial court to dismiss the complaint, which I have referred to, present two serious questions of law and, if the defendant's contention as to either is correct, the determination of the Appellate Division was justified. By reference to the opinion of the Appellate Division, it will be seen that a majority of the learned justices of that court considered that there had been such a failure on the part of the plaintiffs to comply with the provisions of the act of 1886, which require the filing with the corporation counsel of a notice of an intention to commence the action, as to deprive the plaintiffs of the right to maintain it. It was conceded in the opinion that the notice was sufficient, in all respects, except that it should have been

filed with the corporation counsel by the plaintiffs themselves, or in their behalf by their duly authorized agent, and the view was taken that the rule of the statute with respect to filing must be strictly complied with.

This question of the sufficiency of the notice given by the plaintiffs under the statute is, more properly, to be considered in first order. Chapter 572 of the Laws of 1886, in the first section, provides that "no action against the mayor, aldermen and commonalty of any city   * * *   for damages for personal injuries alleged to have been sustained by reason of .the negligence of such mayor, etc.   * * *   shall be maintained * * * unless notice of the intention to commence such action and of the time and place at which the injuries were received shall have been filed with the counsel to the corporation or other proper law officer thereof within six months after such cause of action shall have accrued." The notice which the plaintiffs gave was defective in these respects, viz. : that it was addressed to, and was filed with, the comptroller of the city and that it purported to be given in compliance with section 1104 of the Consolidation Act. In all other respects, the notice did comply with the requirements of the act of 1886. I do not consider that the fact that the notice purported to be given in compliance with section 1104 of the Consolidation Act is of serious importance. It was a mistake, of course ; inasmuch as the section of the Consolidation Act referred to has no reference to the service of a notice of an intention to sue ; but there was no room for mistake as to the purpose and object of the notice, on the part of the municipal officer who received it. The important and serious question, therefore, is whether there was a substantial compliance by the plaintiffs with the provisions of the act of 1886. In that enactment the legislature attached a condition to the right to sue certain cities in tort ; compliance with which was necessary in order to the successful maintenance of the action. The object was that the counsel, or law officer, of the corporation should be seasonably informed of the claim which was to be sued upon ; in order

that it might be immediately investigated and properly defended. While the direction of the statute is one which must be strictly followed, I do not perceive any good reason for holding that the failure of the plaintiffs to file the notice with the counsel to the corporation is fatal to the maintenance of their action, if, in fact, the corporation counsel received and filed the notice. Especially, should this be so, when, as here, he acted upon it by examining the plaintiffs upon the notice to them to appear. The filing of the notice was required by the statute in the interest, and for the benefit, of the defendant and. while made a condition of the right to maintain the action, the intent was to furnish to the corporation a defense by way of bar to the action when not complied with. The provision affected, not the cause of action, but the remedy, by regulating the procedure. The statute neither prescribes a form of notice, nor by whom the notice shall be filed, and while its proper construction might require that the notice be given by the party proposing to commence the action, its provisions are not so rigid as to invalidate the notice, if actually and seasonably received by the corporation counsel, because received by him from another official with whom it was mistakenly filed by the parties.

I can see no analogy here with the case of *Gates* v. *State* (128 N. Y. 221), where we held that the jurisdiction of the board of canal appraisers to act upon a claim against the state depended upon the actual receipt and filing of the claim. In that case the claim was sent by mail and we held that it would be quite inconsistent with the principle upon which that tribunal assumes jurisdiction that that jurisdiction should rest upon a presumption of the receipt of the claim, because sent through the mail. Where jurisdiction to act as a tribunal upon claims against the state, as in that case, is limited and special, it must be based upon indisputable facts and not upon presumptions.

It is my opinion, therefore, that there was a substantial compliance with the act of 1886 and that the purpose of the act was accomplished, when the law officer of the defendant received and filed the notice of these plaintiffs of their intention to commence an action upon the facts stated therein.

The more serious objection, and the one which, to my mind, is fatal to the plaintiffs' cause of action, is that which goes to the right of the plaintiffs to hold the defendant responsible for the act of the driver of the ash cart. It was conceded that he was an employé of the street cleaning department of the defendant and the question is whether the rule *respondeat superior* may apply. That it can be applied to the case of a municipal corporation is, doubtless, true; but its applicability may depend upon the character of the duty performed by the officer, or the subordinate, whose act was the immediate cause of the injury for which the complainant seeks redress. By the New York City Consolidation Act, (Chap. 410, Laws of 1882, as amended by chap. 269, Laws of 1892), certain municipal departments were created; among which was that of the department of street cleaning. (Sec. 34.) It was provided that "the head of the department of street cleaning shall be called the commissioner of street cleaning, and shall, unless sooner removed, hold his office for six years," etc., and his appointment is to be made by the mayor. (Sec. 45.) Section 704 provided that, "The department of street cleaning shall have exclusive charge of the sweeping and cleaning of the streets, and the removal of ashes and garbage in the city," and it, further, empowered and authorized the commissioner of street cleaning, and made it his duty, to remove from said city, or otherwise dispose of, "as often as the public health and the use of the streets may require, all street sweepings, ashes and garbage", etc. By other provisions, the appointment of the members of the department is vested in the commissioner, with certain powers as to their removal; differing as they may belong to the clerical force, or to the "uniformed force" of laborers.

The driver of the ash cart, in this case, as one of the employés of the department, was, therefore, under the immediate control of the commissioner. If the commissioner was engaged in performing a duty laid by the law upon him and not upon the municipality, within the principle of the decision in *Maxmilian* v. *Mayor*, (62 N. Y. 160), the defendant is

not liable for his negligence, or that of his employé. In that case the injury occurred as the result of the act of the driver of an ambulance, who was in the employ of the com- missioner of public charities. It was held that the principle of responsibility for the negligent acts of a subordinate, or servant, could not apply to the defendant corporation, where the act complained of was committed by one in the employ of a department created by the law for the purpose, not of especially benefiting the defendant, but the public, or the members of the community. As the driver of the ambulance was the servant or employé of the commissioners of the depart- ment of charities and corrections, who had the right to select or to remove him, and to control his acts, they, alone, could be considered as his superiors within the rule of law. The test is whether, in the particular case, the power and duty are conferred and accepted for the corporate benefit and per- formed by agents appointed by the corporation and under its control, in which case corporate liability for the acts of its agents attaches; or whether the power and duty are conferred upon public officers, for the public benefit and as a convenient way of exercising a governmental function; over whose sub- ordinates, or servants, the corporation has no control. The doctrine of the *Maxmilian* case was followed in the case of *Ham* v. *Mayor*, (70 N. Y. 459); where the question was as to the liability of the defendant for the acts of the subordi- nates and servants of the commissioners of the board of edu- cation. The department of public instruction, in that case, was held to be a governmental agency and, as the commis- sioners, though appointed by the mayor, were not amenable to the corporation in any respect, there could be no liability upon the part of the city for the acts of their employés. The discussion was very full in the *Maxmilian* case and the decision has always been regarded as authoritative. Unless we can distinguish the present case, and are able to say of this department that its powers were conferred for the benefit of the corporation, as a corporate body, and that its duties are performed by agents appointed by the corporation and under

its control and power of removal, I think we must follow the authority of the *Maxmilian* case. Duties imposed upon municipalities for the benefit of all citizens, in the exercise of the sovereign power, and which are to be performed by independent officers, who may take their appointment from the corporation itself, through the nomination of its executive agents, make of the officers servants of the public at large. They are not then the agents or servants of the municipal corporation ; but they are public officers, agents or servants of the general public, and the corporation is not responsible for their acts, or omissions, or for those of their subordinates. In appointing the officer, in obedience to an act of the legislature, it does so in pursuance of a duty imposed by law for the general welfare of the inhabitants, or of the community. This very explicit doctrine rests upon the basis of the distinction between the exercise by a municipality of powers which are delegated to it by the general government to be exercised for the public welfare and those which are conferred upon it for some especial benefit and advantage in its corporate capacity.

What section 704 of the Consolidation Act required was that the corporation, through a department created for the purpose, should remove from its streets sweepings, ashes and garbage and that it should keep the streets clean, *as a measure of public health.* It is not necessarily a corporate duty of the municipality to remove ashes and garbage ; but that that should be done is important to the members of the community, for the protection of their health, and that the performance of a work so necessary to the public well-being shall not rest in the individual effort of the citizen, the legislative body, acting for the public at large, insures performance by the creation of a particular municipal department, empowered and authorized sufficiently for the purpose. The duty resting upon the department in that respect concerned the general public, as a health measure of far-reaching consequences. The situation is that the legislature of the state created the municipal department and placed at its head an officer, whose term of office

was fixed, who was made independent and who was to appoint, remove and control all the members of the force needed for the department work, and it imposed upon him the duty, " as often as the public health may require," of removing street sweepings, ashes and garbage.   That he and his subordinates are the servants of the defendant, for the consequences of whose negligent, or culpable, acts it is responsible, I very much doubt.   In *N. Y. & B. Sawmill, etc., Co.* v. *City of Brooklyn* (71 N. Y. 580), it was said by CHURCH, Ch. J., " we have recently held that a municipal corporation is not liable for the omission to perform, or for negligence in the performance of a public duty laid upon an independent officer, in which it has no private interest, and from the performance of which it derives no special or corporate benefit, although it is required to elect or appoint such officer, and although the officer has in charge, and the negligence imputed is the use of property owned by the corporation. (Citing *Maxmilian* v. *The Mayor, etc.*)   *   *   *   The general rule may be stated to be that a municipal corporation is only liable for the acts or omissions of officers in the performance of duties imposed upon the principal."

In creating this department of the New York city government the legislature delegated to it, as a political agency, a duty which related to the protection of the public health. This duty, as one of the highest which pertain to government, for its full and efficient performance, manifestly, required such legislation as would tend to insure the removal and the prevention of conditions favorable to the development, or the spreading, of disease.   Therefore, the head of the department had his direct grant of power and his direct imposition of duty from the statute.   The defendant may not control him, save in strict accordance with the provisions of law, and it may neither select, nor control, nor remove his agents or subordinates.   How can the rule *respondeat superior* apply; as it was asked in the *Maxmilian* case?   Where a duty rests upon the municipality, in the performance of which it is interested, either because of advantage

in revenue or emoluments, or because it pertains to it in its private corporate capacity, then it will be held to a strict liability for the consequences of a careless performance, or of a non-performance, of some duty, through which injury or damage has occurred. Such a duty belongs to the municipality as to keep its streets, bridges and other ways of passage in repair, and the reference of appellants' counsel is to that class of cases. They are, however, corporate acts, expressly or impliedly agreed to be performed through the acceptance of the grant of a charter. The duty is one with which the city is charged for its own corporate benefit, which is to be performed by its own agents and for the performance of which it is responsible upon settled principles. Cases in other jurisdictions might be referred to, which hold that, where a municipal corporation is engaged in the governmental duty of promoting the general health, it will not become liable for the negligence of those employed in the performance of that duty. (*Condict* v. *Jersey City*, 46 N. J. L. 157; *Connelly* v. *Nashville*, 100 Tenn. 262.) In the *Condict* case the negligent act was committed by the driver of a dump cart; while in the *Connelly* case it was committed by the driver of a sprinkling cart.

My conclusion is that the defendant was not responsible for the tortious act of the driver of this ash cart. His superior was the commissioner of the street cleaning department and that officer was engaged in discharging a duty laid upon him as an independent officer, for the purpose of doing something which would tend to insure the health and comfort of the public at large.

For these reasons, I think that the judgment and order appealed from should be affirmed and that judgment absolute should be ordered for the defendant, with costs.

HAIGHT, MARTIN and VANN, JJ., concur with BARTLETT, J., for reversal, etc.; O'BRIEN, J., concurs with GRAY, J., for affirmance; PARKER, Ch. J., not sitting.

Judgment and order reversed, etc.