ALFRED K. NIPPERT, MAUD GAMBLE NIPPERT, AND OLIVIA P. GAMBLE, EXECUTORS AND TRUSTEES OF THE ESTATE OF JAMES N. GAMBLE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55595. Promulgated July 9, 1935.

*Laurence Graves, Esq.,* and *Ike Lanier, Esq.,* for the petitioners.
*L. H. Rushbrook, Esq.,* and *Harold Allen, Esq.,* for the respondent.

894

OPINION.

TURNER: The petitioners take the position that the decedent had a net cash investment, including bonds, stock, judgment, and advances, in the Cincinnati & Westwood Railroad Co. in the amount

of $373,714.59, which he sold in 1928 for $80,000, thereby sustaining a loss of $293,714.59. This loss they claim as an allowable deduction for that year under the provisions of section 23 (e)[1] of the Revenue Act of 1928.

The respondent has determined that the decedent's stock and all claims against the Company, exclusive of the bonds, were worthless prior to 1928 and that neither the cost of the stock nor any part of the judgment or advances is deductible for that year either as a loss under section 23 (e), *supra*, or as bad debts under subsection (j)[2] of the same section. He has therefore applied the $80,000 received against the cost of the bonds and found a deductible loss of only $20,000. The petitioners have alleged that the respondent erred in refusing to allow as a deduction all of the amount claimed as a loss in respect to the stock, judgment, and advances.

On the record we agree with the respondent that the stock was worthless prior to the year of the sale. Numerous events in the history of the Company convince us that the stock had been worthless for a number of years. We note particularly in this connection the fact that the Company was heavily indebted to the decedent. We also note that freight service was discontinued in 1924 and that passenger service had previously been discontinued. It is thus apparent that the road, if it had any value, was valuable to the extent that it might be utilized as part of a more comprehensive transportation unit. It is also apparent that the decedent's hope of recovering the money he had spent was dependent upon his ability to sell, and as early as 1914 he gave Henry an option to purchase his interest for an amount which allowed nothing for the stock, if the priority of debts over stock be considered. On that basis the result would have indicated a total loss of his stock investment had Henry exercised the option. It is true that the stock was still outstanding and was included in the transaction in 1928. It seems reasonable to assume, however, that had the stock been owned by some one other than the decedent, he would have taken steps many years prior to 1928 to have the corporation liquidated and its property brought directly under his control. Any equity that the stockholders had in the corporation's assets was, in

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

  *       *       *       *       *

(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft.

[2] SEC. 23 (j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

our opinion, entirely extinguished long prior to 1928. *Gowen* v. *Commissioner*, 65 Fed. (2d) 923; *De Loss* v. *Commissioner*, 28 Fed. (2d) 803; certiorari denied, 279 U. S. 840; *Royal Packing Co.* v. *Commissioner*, 22 Fed. (2d) 536. Cf. *Homer M. Preston et al., Administrators*, 7 B. T. A. 414; *William E. Metzger*, 21 B. T. A. 1271; *Wm. E. Steinback*, 30 B. T. A. 1252; *Paul Pryibil*, 31 B. T. A. 164.

With reference to the judgment and advances, the claim of the petitioners is much more convincing. Throughout the period of his connection with the Company the decedent undoubtedly believed that it had assets with a large potential value. It is perhaps true that there were times when the value of the Company's railroad contracted sharply, but it is equally true that at other times they promised the recoupment of a substantial part of his advances and investment. For example, during 1920 and 1921 the decedent received $21,000 on an option to buy his interests at a total figure of approximately $265,000. A sale at such a figure would have resulted in the recoupment of decedent's investment in bonds and approximately $165,000 of his loans and advances.

While Henry would not pay $5,000 to renew his option in 1922, the decedent still had the city of Cincinnati as a prospective purchaser. The potential value of the Company's property remained until the city abandoned its project on account of the Beeler report. Even then the property had a substantial cash value, since the decedent actually received $80,000 in cash for all of his interests in the Company. This sale completely closed the transaction for the decedent and established the amount of his loss, and prior to this sale we do not believe it could have been said that there was no possibility of recouping at least a part of the advances. Accordingly we find nothing in this record to indicate that decedent was accumulating bad debts to deduct them in a year subsequent to the year of their worthlessness, as was true in *Avery* v. *Commissioner*, 22 Fed. (2d) 6. We believe that a deduction for any year prior to 1928 would properly have been denied decedent because of the substantial value of the Company's property. See *Winthrop Ames*, 1 B. T. A. 63; *G. C. Krack*, 1 B. T. A. 1119; *Ward Ames, Jr.*, 27 B. T. A. 624; affd., 71 Fed. (2d) 939. We are of the opinion, therefore, that the advances made by decedent to the Company were not worthless prior to the year of the sale. *C. B. Little*, 27 B. T. A. 1022; affd., *Little* v. *Helvering*, 75 Fed. (2d) 436; *Clara B. Parker, Executrix*, 30 B. T. A. 1231, petition to review dismissed, *Helvering* v. *Parker*, 75 Fed. (2d) 1010.

The respondent has urged that the bar of the statute of limitations was available to the Company, both as to the judgment and as to

most of the advances, Pages Annotated Ohio General Code, secs. 11218–22, which fact, he contends, establishes the worthlessness of the judgment and all advances made more than six years prior to 1928.

Under the Ohio code a judgment becomes dormant if execution be not sued out within five years from the date of judgment, or if five years intervenes between the date of last execution issued thereon and that of suing out another execution, sec. 11663, Ohio code. It further appears, sec. 11648 of said code, that an action to revive a judgment can only be brought within 21 years after it becomes dormant. There is nothing in the record to show that the judgment ever became dormant. On the contrary, the record is that the judgment was revived from time to time. Two such revivors would bring this judgment within the 21-year period of the statute of limitations. A court of competent jurisdiction has considered the question and ordered the judgment to stand revived. On the record before us we can not say that the judgment has become outlawed by the statute of limitations.

While the Ohio statute of limitations might have been available to the Company as a defense against decedent's efforts to collect his advances, such local statutes are not decisive of what deductions may be taken under a Federal tax statute. *Weiss* v. *Wiener*, 279 U. S. 333. The Board has considered this question in several cases and has held that the availability of the statute of limitations as a defense is not in itself a sufficient ascertainment of the worthlessness of a debt to justify its charge-off, *Leo Stein*, 4 B. T. A. 1016; *Warner L. Colvert*, 6 B. T. A. 623; *Ralph H. Cross*, 20 B. T. A. 929; affd., 54 Fed. (2d) 781; *Clara Burdette*, 25 B. T. A. 692; affd., *Commissioner* v. *Burdette*, 69 Fed. (2d) 410; *W. C. Mitchell Co.*, 27 B. T. A. 645; *G. M. Standifer Construction Corporation*, 30 B. T. A. 184. In view of these decisions we hold against respondent on his contention respecting the prior worthlessness of decedent's judgment and advances.

The remaining issue presents the question as to whether or not a capital net loss should be deducted from gross income in applying the 15 percent limitation in computing the deduction for contributions. We have considered this question in *James H. Lockhart*, 32 B. T. A. 732, wherein we held that the base for the computation of the 15 percent limitation on such a deduction is gross income less all permissible deductions except contributions themselves. This issue is accordingly determined in favor of the respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*