*127 OPINION.
MellOtt :
Petitioner contends that the compensation received by him from the cities of New York and Chicago is exempt from the Federal income tax, under the well settled rule, often enunciated by the courts and applied by this board, that the Federal Government may not interfere with the exercise of essential governmental functions of the states through taxing the instrumentalities or agencies by which their traditional acts of sovereignty are exercised. McCulloch v. Maryland, 4 Wheat. 316; Collector v. Day, 11 Wall. 113; Pollock v. Farmers’ Loan & Trust Co., 157 U. S. 429; Ambrosini v. United States, 187 U. S. 1; Flint v. Stone-Tracy Co., 220 U. S. 107; Metcalf & Eddy v. Mitchell, 269 U. S. 514; and Helvering v. Powers, 293 U. S. 214.
It is earnestly argued that the Board of Transportation of New York City, in planning, constructing, and operating its subways, was engaged in a governmental, rather than a proprietary, activity, because of the “peculiar conditions” existing in that city. Some of the conditions referred to are the immense population and congestion, restricted physical facilities, magnitude of the task and inability to induce private capital to undertake it. It is said that the “exigencies of the situation created by the immensity of the task * * * actually forced” the city to undertake it. Upon brief it is stated:
It certainly was not a desire to go into the transportation business; or any expectation of earning the ordinary expense of maintaining a transportation system, to say nothing of profits; nor was it a grand gesture. It was caused by primary and pressing concerns of health, safety, and the well-being of its citizens; the relocation of industries out of joint with and retarding the development or destroying the value of neighborhoods and properties; the shifting of population to avoid intolerable housing and living conditions inimical to the welfare of the City from any governmental angle; the proper planning and development of the City as a whole; the articulation of the immense masses of traveling and working population and to give to the poor sections of the City, the same type of transportation and at the same rate furnished to the more favorable portions of the City. These are governmental functions and duties which a government necessarily owes to its citizens.
Petitioner also contends that inasmuch as he had nothing whatever to do with the operation of the subways, he can not be said to have been engaged in a business of a proprietary nature. He claims that the engineering department was entirely separate and apart from the operating department, and that, while the latter may have been a business activity, the construction of the subways under his *128 supervision was a governmental function. The distinction made by petitioner between the construction of a subway and its operation is not sound. Both are part of the same activity, viz., providing rapid transit for New York City; and both were performed by the city acting through the same agency, the Board of Transportation.
The powers of a municipal corporation are divided into two parts, one governmental, in the exercise of which it represents the sovereign or state; and the other proprietary. Harris v. District of Columbia, 256 U. S. 650. The question as to which capacity New York City was acting in when it constructed and operated its subways was directly before the Court of Appeals of New York in In re Board of Rapid Transit Commissioners, 197 N. Y. 81; 90 N. E. 456. The issue was whether the city was liable in damages resulting from the construction and operation of its subways. In holding that it was, the court said in part:
Was the action of the city in building the subway governmental or proprietary in character? The city owns the subway, and it is a railroad corporation so far as the construction, operation, and leasing thereof is concerned. It was not required but simply permitted, to build and operate the road. It is authorized to lease its railroad, either for “a specified sum of money or a specified proportion of income, earnings or profits,” or it may operate the road itself, and charge such rates of fare for the transportation of persons and property as may be fixed by its own boards and officers. Laws 1909, c. 498, Sections 27 and 30. In other words, the subway is a business enterprise of the city, through which money may be made or lost, the same as if it were owned by an ordinary railroad corporation. It was built by and belongs to the city as a proprietor, not as a sovereign. MaxMilian v. Mayor, etc., of New York, 62 N. Y. 160, 20 Am. Rep. 468; Missano v. Mayor, etc. of New York, 160 N. Y. 123, 54 N. E. 744; South Carolina v. United States, 199 U. S. 437, 26 Supt. Ct. 110, 50 L. Ed. 261. [Italics supplied.]
In Flint v. Stone-Tracy Co., supra, the Supreme Court considered the taxability of the Interborough Rapid Transit Co., the operating company of one of New York City’s subways. It claimed to be exempt from an excise tax laid upon corporations. The Court, denying the exemption, stated: “It is no part of the essential governmental functions of a state to provide means of transportation, supply artificial light, water and the like.”
The Circuit Court of Appeals for the Second Circuit recently had before it a case analogous to the case at bar, Brush v. Commissioner, 85 Fed. (2d) 32. The petitioner had been employed by the city of New York for many years as engineer in charge of its water supply. His duties required him to make surveys, plans, and reports relative to the improvements and enlargements of the system, and to maintain in good condition the reservoirs and mains. He held a statutory office for which he had duly qualified. The court denied the contention that his salary was exempt from the Federal income tax, holding *129 that it “was not part of the expense attendant upon the exercise of what may be said to be usual governmental powers * * * or in the doing of what the states have traditionally engaged”, citing Helvering v. Powers, supra, and United States v. State of California, 297 U. S. 175.
In Helvering v. Powers, supra, the Supreme Court stated it saw “no reason for putting the operation of a street railway in a different category from the sale of liquors.” The same may be said of a subway. Nor can it make any difference that the construction and operation of the subway were undertaken because of the state’s or city’s “conception of public advantage.” The fact remains that the enterprise undertaken is “of a sort that is normally within the reach of the Federal taxing power and is distinct from the usual governmental functions.” Such an activity on the part of the city is not exempt from the Federal tax and the compensation received by this petitioner is taxable.
The cited cases compel the same conclusion with reference to the compensation received by petitioner from the city of Chicago. In addition, the compensation received by petitioner from this city was received by him as an independent contractor. His duties and compensation were fixed by contract, and even though the board or committee employing him were engaged in a governmental function, his compensation is not exempt. Commissioner v. Modjeski, 75 Fed. (2d) 468; Metcalf & Eddy v. Mitchell, supra; John R. Spelman, 18 B. T. A. 313; Edward M. Lynch, 30 B. T. A. 727; Donald Francis Campbell, 33 B. T. A. 101; Harry Goldstine, 33 B. T. A. 173.
We sustain petitioner’s contention with reference to the deduction of the loss of his investment in the Kreuger & Toll American certificates. We are satisfied that such certificates were worthless in 1932. They had for their basis the debentures issued by the Swedish company. This company became bankrupt in 1932. Four years thereafter, at the time of the hearing before us, petitioner, as an investor in such certificates, had received no part of his investment and the evidence tended to establish the fact that he never would receive any part of it. He concluded in 1932 that his investment was worthless, listed the securities in his memorandum book “at zero”, and testified before us that in that year he “had no hope of recovering” any part of his investment.
It is settled that if an investment becomes wholly worthless, its cost or other applicable basis may be deducted by a taxpayer from his gross income in the year in which it actually became so; and it is not necessary that there be a sale, or an attempted sale, within such taxable year. DeLoss v. Commissioner, 28 Fed. (2d) 803; certiorari denied, 279 U. S. 840; Royal Packing Co. v. Commissioner, 22 Fed. *130 (2d) 536; Dalton v. Bowers, 56 Fed. (2d) 16; affd., 287 U. S. 404; Burns Manufacturing Co. v. Commissioner, 59 Fed. (2d) 504; Forbes v. Commissioner, 62 Fed. (2d) 571; Paul Pryibil, 31 B. T. A. 164; Alfred Hafner, 31 B. T. A. 338; Alfred K. Nippert et al., Executors, 32 B. T. A. 892; article 174 of Regulations 77 (1932) and Regulations 74 (1928).
Reviewed by the Board.

Judgment will be entered under Rule 50.