Gardner S. Marion and Margaret P. Marion, Husband and Wife v. Commissioner.
Gardner v. Commissioner
Docket No. 12017.
United States Tax Court
1947 Tax Ct. Memo LEXIS 29; 6 T.C.M. (CCH) 1253; T.C.M. (RIA) 47315; November 26, 1947
*29 Harry Finn, Esq., for the petitioner. Paul P. Lipton, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves deficiency in income tax for 1941 in the amount of $3,299.03. The only issue presented is, whether petitioners are entitled to a bad debt deduction for 1941 with respect to a joint and several note dated January 2, 1928. From evidence, both documentary and oral, we make the following Findings of Fact Gardner S. Marion (hereinafter referred to as Marion) and Margaret P. Marion were married in 1916 and have lived together as husband and wife since that time. They are residents of Concord, Massachusetts and filed a joint income tax return for the calendar year 1941 with the collector of internal revenue for the District of Massachusetts. Under date of February 15, 1928, Marion and C. Albert Beals, executed a written agreement with Benj. Pope and Edgar W. Cottle, Inc., relative to the purchase by Marion and Beals of the assets of the latter company for $359,723.84, and the organization by Marion and Beals of a new corporation to be known as Pope & Cottle Co. According to the agreement the sale price *30 of $359,723.84 was payable as follows: "ONE HUNDRED AND TWENTY THOUSAND DOLLARS ($120,000.) by a first mortgage on all said real estate to be given by a new corporation called 'POPE & COTTLE CO.' and payable in one (1) year from its date with interest at six per centum (6%) per annum payable semi-annually. "ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.) by a joint and several note of the Purchasers with interest at six per centum (6%) per annum payable TWENTY-FIVE HUNDRED DOLLARS ($2,500.) on the principal quarter-annually for the first nine (9) months and interest quarterannually and the balance in one (1) year from it date, such note to be secured by deposit as collateral of all the stock of the new corporation 'POPE & COTTLE CO.', and the balance EIGHTY-NINE THOUSAND SEVEN HUNDRED TWENTY-THREE DOLLARS AND SEVENTY-FOUR CENTS ($89,723.74), in cash." Pope & Cottle Co., a Massachusetts corporation, was organized on February 15, 1928, with an authorized capital stock of 1,000 shares of non par common stock. Marion and Beals were each issued 500 shares of stock. Marion and Beals executed a promissory note dated January 2, 1928, in the amount of $150,000 payable to Benj. Pope *31 & Edgar W. Cottle, Inc., in part payment for the latter company. The note reads as follows: "$150,000.00 January 2, 1928 Chelsea, Mass.
"FOR VALUE RECEIVED we, jointly and severally, promise to pay to Benj. Pope & Edgar W. Cottle, Inc. or order ONE HUNDRED AND FIFTY THOUSAND DOLLARS, payable as follows: "TWENTY-FIVE HUNDRED DOLLARS ($2,500.) three months from date, TWENTY-FIVE HUNDRED DOLLARS ($2,500.) six months from date, TWENTY-FIVE HUNDRED DOLLARS ($2,500.) nine months from date and the balance in one year from date, with interest payable quarter-annually, at the rate of six (6) per centum per annum, having deposited with this obligation as general COLLATERAL SECURITY viz: One Thousand (1,000) shares of the Common Stock without par value of Pope & Cottle Co., a Massachusetts corporation organized in 1928, with power, on nonpayment of this liability, to sell and transfer said property or any other property substituted for the same or any part thereof, at Brokers' Board or at public auction or private sale, with thirty (30) days notice to the makers hereof; and the said holder or holders hereof may become purchasers at any such sale, if at public auction or at Brokers' Board; *32 and any property substituted for the above or added thereto, shall be equally covered by this agreement. No substitution of property as COLLATERAL SECURITY may be made without the consent of the holder or holders hereof. "After deducting costs and expenses of collection and sale, the residue of the proceeds of any sale or sales shall be returned to the undersigned; and in case of deficiency we jointly and severally, agree to pay to the said holder or holders the amount thereof forthwith, after such sale, with legal interest. "Signed in the presence of. Gardner S. Marion Mary H. Robertson Charles Albert Beals" Upon the organization of Pope & Cottle Co., Marion and Beals each endorsed his 500 shares of common stock in Pope & Cottle Co. to Benj. Pope & Edgar W. Cottle, Inc., as collateral for the note referred to above. With respect to this note installment payments aggregating $30,000 were made on account of principal. The last payment on account of principal was made on January 5, 1931. The last payment of interest was January 4, 1932. The note was subsequently endorsed by the payee to Pope & Cottle Associates (Pope & Cottle Associates was a holding company or an investment *33 trust, the beneficiaries of which were Benjamin Pope and Edgar W. Cottle) by the latter to the estate of Benjamin Pope and later by the executors of that estate to Margaret P. Marion who received and held as collateral for this note the 1,000 shares of common stock of Pope & Cottle Co. The real estate covered by the purchase agreement, above referred to, was conveyed to Pope & Cottle Co. by Benj. Pope & Edgar W. Cottle, Inc., by a quitclaim deed dated February 15, 1928. Under the same date, Pope & Cottle Co. executed a mortgage note in the amount of $120,000 payable to Benjamin Pope & Edgar W. Cottle. This note was subsequently endorsed by the payee to Benjamin Pope & Edgar W. Cottle, Inc., by the latter to Pope & Cottle Associates, then to the Estate of Benjamin Pope and under date of January 27, 1932, to Margaret P. Marion. On January 29, 1932, Pope & Cottle Co. issued to Margaret P. Marion 1,200 shares of preferred stock in Pope & Cottle Co. in consideration for the discharge of the mortgage. On January 29, 1932, Beals transferred to Marion 87 of the 500 shares of common stock of Pope & Cottle Co. held in his name, and on February 4, 1937, transferred his remaining 413 shares *34 to Marion. The transfer of the 87 shares was to reimburse Marion for the transfer to Pope & Cottle Co. by Marion of life insurance having a cash surrender value of approximately $9,000. The 413 shares were transferred to Marion in consideration of the cancellation of a personal indebtedness of $20,000 owed to Marion by Beals. In February, 1938, Pope & Cottle Co. issued 750 shares of preferred stock to Margaret Pope Marion in consideration for $75,000 cash. Benjamin Pope died on April 18, 1930. He was survived by his wife, Bessie Pope, and two daughters, Mrs. E. B. Moore and Margaret P. Marion. Benjamin Pope bequeathed substantially all his estate in trust to his wife for life, with remainders payable to his daughters in equal shares on the death of his wife. The widow died January 5, 1932. The first account of Edgar W. Cottle and Edward N. Chase, Executors of the last will and testament of Benjamin Pope for the period May 13, 1930, to June 30, 1932, shows under Schedule B, "Legacies and Distributive Shares" - under date of February 5, 1932, in part, the following: "To Margaret Pope Marion, Residuary
Legatee: "$120,000.00 Mortgage of Pope
& Cottle Co.
$120,000.00
$120,000.00 Note of G. S.
Marion & C. A. Beals
120,000.00"
*35 Beals and Marion had been associated together in business since 1913. Beals was an officer of Pope & Cottle Co. from its incorporation through 1940. He received an annual salary of $10,000 until 1932. From 1932 to 1934 he received $7,500 per annum. Thereafter, until the end of 1940, he received an annual salary of $5,000. He became seriously ill in 1940. He was away from work most of the time during 1940, and was unable to attend business. He was hospitalized for about 3 weeks in December of that year, at which time his physical condition was very poor. The resignation of Beals as an officer of Pope & Cottle Co. was accepted at a directors' meeting held December 23, 1940. From January 1941 to June 1941 Beals received a salary of $35 a week from Pope & Cottle Co. Since that time he has received a pension of $15 a week. By letter dated February 11, 1941, Beals was advised that his insurance company had approved making monthly disability income payments to him beginning with the payment due December 30, 1940. Balance sheets of Pope & Cottle Co. as of December 31, 1940, and December 31, 1941, were as follows: December 31, 1940
December 31, 1941
ASSETS
Cash $ $ 894.17 $ $ 2,774.89
Notes and accounts receivable
81,638.64
103,324.43
Less: Reserve for bad debts
2,000.00
79,638.64
2,000.00
101,324.43
Inventories
42,506.22
49,877.98
Investments-Stocks-Domestic Corp.
49,398.56
49,319.42
Depreciable assets -
Buildings
40,957.85
40,957.85
Equipment
27,145.43
27,307.67
Total depreciable assets
68,103.28
68,265.52
Less: Reserve for depreciation
49,676.09
18,427.19
51,057.47
17,208.05
Suspense
6,744.53
Land
38,566.44
38,566.44
Other assets -
Life Insurance
17,070.39
18,079.02
Deferred Charges
2,082.84
19,153.23
3,201.85
21,230.87
Total assets
$255,328.98
$280,352.08
LIABILITIES
Accounts payable
46,069.00
70,470.35
Bonds, notes, and mortgages payable
30,800.00
27,400.00
Accrued expenses - Taxes
5,935.03
8,664.42
Capital stock: Preferred stock
165,000.00
165,000.00
Common stock
100,000.00
265,000.00
100,000.00
265,000.00
Earned surplus and undivided profits
(92,475.05)
(91,182.69)
$255,328.98
$280,352.08
*36 During 1941 Pope & Cottle Co. had a subsidiary corporation known as the Pre-Built Company. The prospects of the latter company were very bright in 1941. Under item 15 of their income tax return for 1941, petitioners claimed a deduction of $60,000, explained as follows: "Notes Receivable
$60,000.00
"This claim is on a note in the above amount covering a loan made in 1928 or 1929. The maker of the note retired from business activities at the close of 1940 due to poor health, and it is now apparent that such retirement is permanent. No recovery is expected on any part of the principal or interest on this note." The item was disallowed by the Commissioner in his notice of deficiency, and the following explanation was given for the disallowance: "The deduction claimed on your income tax return for the year 1941 as a bad debt or a partial bad debt in the amount of $60,000 is not allowable since it has not been established that such amount became worthless within the taxable year as provided in Section 23(k) of the Internal Revenue Code." Opinion The $60,000 deduction is based on the $150,000 joint and several note executed by Marion and *37 Beals January 2, 1928, and later reduced by payments to $120,000, but it does not appear, either in the record or on brief, how the $60,000 figure is arrived at. From the statement attached to the income tax return it appears that petitioners considered half of the $120,000 note as the amount owing by Beals on the above joint and several promissory note. This, however, is of little consequence, since the promissory note is one of joint and several liability and both Beals and Marion are liable for the full amount. In the case of a joint obligation, it is necessary to prove that the debt is uncollectible as to both of the debtors. Uhl Estate Co. v. Commissioner, 116 Fed. (2d) 403. Respondent's primary argument is that petitioners have not proved that they are entitled to a bad debt deduction under section 23 (k) (1) of the Internal Revenue Code. [1] He also questions the proof of basis of the note to the petitioner Margaret P. Marion. *38 Assuming that petitioners have established that the note was uncollectible as far as Beals was concerned, it has not been proved worthless as to Marion. Petitioner, on brief, argues that Margaret P. Marion could not bring suit against her husband for the collection of the note, but it has not been proved that a suit was necessary. On cross-examination of Marion the following appears in the record: "Q. Has Mrs. Marion ever demanded payment of those other notes from you? "A. She has." The particular statement is indefinite as to which note is indicated, since the words "those other notes" do not point to any particular note and the testimony immediately preceding does not help identify it. This being the only testimony in the record pertaining to the collectibility of the note dated January 2, 1928, by Margaret P. Marion from her husband, we can not conclude that there was demonstrated a real effort on her part to collect the note from her husband. In fact, there is no evidence of any attempt on her part to collect the debt from her husband. "A taxpayer must exhaust all the usual and reasonable means of collecting a debt before there can be an ascertainment of worthlessness. *39 " Charles N. Spratt, 43 B.T.A. 503, (513). The argument on brief of petitioners as to the wife's inability to bring suit against her husband is comparable to the argument advanced in many cases concerning the statute of limitations as a defense, thereby claiming a bad debt. The question of the statute of limitations has long since been settled. "While the Ohio statute of limitations might have been available to the Company as a defense against decedent's efforts to collect his advances such local statutes are not decisive of what deductions may be taken under a Federal tax statute. Weiss v. Wiener, 279 U.S. 333. The Board has considered this question in several cases and has held that the availability of the statute of limitations as a defense is not in itself a sufficient ascertainment of the worthlessness of a debt to justify its charge-off. [Citing many cases.] * * * Alfred K. Nippert et al., Executors, 32 B.T.A. 892." The mere fact that the statutes of Massachusetts do not authorize suits between husband [and] wife does not of itself establish the worthlessness of a debt. Nothing indicates, nor is it argued, that she could not have *40 sold the note to another. Crosby v. Clem, 95 N.E. 297; Giles v. Giles, 181 N.E. 176. Moreover it has not been shown that the note became worthless in 1941. Under section 23 (k), Internal Revenue Code effective in 1941, the test was whether the debt "became worthless" in that year. Assuming, however, that petitioners are correct in their argument that the debt was worthless as to Marion because of the Massachusetts statutes that prevent a wife from suing her husband, then it would follow that the debt became worthless as to him at the time Margaret P. Marion acquired the note on or about February 5, 1932, rather than in 1941. Petitioners also argue that the thousand shares of common stock of Pope & Cottle Co., held as collateral for the note, had a market value in 1932 but no market value in 1941. This is no proof as to when, during that nine year period, the market value of the stock became nil. Without such information we can not say that the collateral held by Margaret P. Marion became worthless in the year 1941. Beals transferred legal title to the stock he owned in Pope & Cottle Co., held by Margaret P. Marion as collateral for *41 payment of the debt, to Marion, the last transfer being made February 4, 1937. The transfer of the legal title of the collateral from Beals to Marion would not jeopardize Margaret P. Marion's position as payee since both makers were equally liable on the note and she continued to hold the stock as collateral for payment of the debt. Moreover, assuming that the debt was worthless as to Beals, there is no proof in the record that there was a possibility of collection at the beginning of 1941 and no convincing evidence to lead us to believe that it became worthless in that year. There is some evidence tending to indicate that the note was considered by the parties worthless in a prior year. Benjamin Pope died April 18, 1930; his widow died January 5, 1932; the note here in question was acquired by Margaret P. Marion on or about February 5, 1932. The last payment on principal was January 5, 1931, and the last payment on interest was January 4, 1932. We do not see, moreover, that petitioners have proved the debt worthless as to Beals. There is no evidence of any effort to collect from him in 1941, or in any prior year, and no evidence to support the conclusion that efforts to collect *42 would have been hopeless. Considerable evidence has been placed before us to establish as a fact that Beals had a very small income during the taxable year and we have so found. The more vital question, as far as the worthlessness of the debt is concerned, is whether Beals had other assets from which the debt could have been collected. This is argued on brief but the record is devoid of facts on the subject. Without proof as to Beals' assets, it is clear that petitioners have failed to prove the debt worthless as to Beals. Petitioners have also failed to prove the worthlessness of the common stock of Pope & Cottle Co., held by Margaret P. Marion as collateral for the note. The only evidence before us on this point is the testimony of Marion that to his knowledge the common stock of Pope & Cottle had no market value in 1941 and an unexplained balance sheet that of itself does not reveal that the stock was without value. We can not conclude from such evidence that the collateral was worthless in 1941. The case turns on the facts presented. In the light of all the facts presented we can not say the debt of $60,000 became worthless in the year 1941. This renders it unnecessary to *43 decide as to what basis the petitioner Margaret P. Marion had in the note. We have no alternative to hold that petitioners have failed to prove error on the part of the Commissioner. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(k) Bad debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts: and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *↩